PAGES 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG

WILLIAM AMBROSIO, ET AL.,          )
                                   )
            PLAINTIFFS,            )
                                   )
  VS.                              ) NO. C 11-4956
                                   )
CERTAIN UNDERWRITERS AT LLOYD'S    )
UNDER POLICY NO. B0146LDUSA701030  )
AND DOES 1 THROUGH 100, INCLUSIVE, )
                                   )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.            )  THURSDAY
                                   )  FEBRUARY 2, 2012
_____)

AND ALL RELATED MATTERS.           ) NOS. C 11-4957, C 11-4958,
                                   )      C 11-5759, C 11-5760,
                                   )      C 11-5761, 11-6366,
_____)      C 11-6368


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS**          LAW OFFICES OF GEORGE DONALDSON
                            2298 DURANT AVENUE
                            BERKELEY, CALIFORNIA  94704
                    BY:  **GEORGE DONALDSON, ESQUIRE**


                            LAW OFFICES OF JEFFERY J. SWANSON
                            2525 PARK MARINA DRIVE, SUITE 102
                            REDDING, CALIFORNIA  96001
                    BY:  **JEFFERY J. SWANSON, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)

*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
            *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**

**FOR PLAINTIFFS**        CAPPELLO & NOEL, LLP
831 STATE STREET
SANTA BARBARA, CALIFORNIA 93101
        **BY: TROY A. THIELEMANN, ESQUIRE**

STENBERG & COAD-HERMELIN, LLP
540 LENNON LANE
WALNUT CREEK, CALIFORNIA 94598
        **BY: CAROLYN GIGG, ESQUIRE**

LAW OFFICES OF JEFFREY A. FELDMAN
425 CALIFORNIA STREET, SUITE 2025
SAN FRANCISCO, CALIFORNIA 94104
        **BY: THOMAS HAROLD PORTER, ESQUIRE**

**FOR DEFENDANT CERTAIN**  SEDGWICK LLP
**UNDERWRITERS AT**      333 BUSH STREET
**LLOYD'S UNDER POLICY**  30TH FLOOR
**NO. B0146LDUSA0701030**  SAN FRANCISCO, CALIFORNIA 94104-2834
        **BY: MICHAEL LOUIS FOX, ESQUIRE**

1                **PROCEEDINGS; THURSDAY, FEBRUARY 2, 2012**

2

3          **THE CLERK:**  C-11-4956, AMBROSIO, ET AL. VERSUS

4   CERTAIN UNDERWRITERS AT LLOYD'S AND ALL RELATED MATTERS.

5          **THE COURT:**  IF COUNSEL WOULD MAKE THEIR APPEARANCES?

6          **MR. NARBAITZ:**  GOOD AFTERNOON, YOUR HONOR.  JAMISON

7   NARBAITZ, SEDGWICK LLP, FOR DEFENDANT BRIT UW LIMITED.

8          **MR. FOX:**  GOOD AFTERNOON, YOUR HONOR.  MICHAEL FOX,

9   ALSO OF SEDGWICK, ON BEHALF OF BRIT UW LIMITED.

10         **THE COURT:**  GOOD AFTERNOON.

11         **MR. DONALDSON:**  GOOD AFTERNOON, YOUR HONOR.  GEORGE

12  DONALDSON ON BEHALF OF THE AMBROSIO PLAINTIFFS, WHICH IS THE

13  LOW NUMBERED CASE.

14         **THE COURT:**  VERY WELL.  GOOD AFTERNOON.

15         **MR. THIELEMANN:**  GOOD AFTERNOON, YOUR HONOR.  TROY

16  THIELEMANN FOR THE ROSEVILLE PLAINTIFFS.

17         **THE COURT:**  GOOD AFTERNOON.

18         **MR. SWANSON:**  GOOD AFTERNOON, YOUR HONOR.  JEFF

19  SWANSON FOR THE WOOD RIVER PLAINTIFFS.

20         **THE COURT:**  GOOD AFTERNOON.

21         **MS. GIGG:**  GOOD AFTERNOON, YOUR HONOR.  CAROLYN GIGG

22  ON BEHALF OF THE ANDERSON PLAINTIFFS AND ALSO SPECIALLY

23  APPEARING ON BEHALF OF THE NOWACKI PLAINTIFFS AND OAKDALE

24  PLAINTIFFS.

25         **THE COURT:**  GOOD AFTERNOON.

1          **MR. PORTER:** TOM PORTER APPEARING ON BEHALF OF THE

2    ALVARADO PLAINTIFFS AND SPECIALLY ON BEHALF OF THE JAMISON

3    PLAINTIFFS.

4          **THE COURT:** GOOD AFTERNOON.

5          I DON'T PROPOSE TO HAVE A -- PROVIDE YOU WITH A

6    TENTATIVE CONCLUSION WITH RESPECT TO THE MOTIONS, BUT PERHAPS

7    DIRECT YOU TO THE ISSUES THAT SEEMED TO BE THE CENTRAL ONES FOR

8    US TO DECIDE.  I RECOGNIZE ALSO THIS IS SCHEDULED FOR A CASE

9    MANAGEMENT CONFERENCE AS WELL.

10          I WANT TO ADDRESS THESE MOTIONS FIRST, I THINK,

11    RATHER THAN DOING SOME CASE PLANNING TODAY.  I THINK IT'S IN

12    EVERYBODY'S INTEREST FOR ME TO GET THROUGH THIS PROCESS AND

13    HAVE, PERHAPS, A RENEWED CASE MANAGEMENT CONFERENCE SHORTLY

14    AFTER ADDRESSING THIS MOTION.

15          I APPRECIATE YOU PROVIDING ME WITH THE STATEMENT, AND

16    IT DOES GIVE ME SOME IDEA ABOUT WHERE YOU WOULD SEE THIS GOING,

17    BUT I DON'T THINK WE NEED TO SPEND OUR TIME THIS AFTERNOON ON

18    THOSE ISSUES.

19          THE CENTRAL QUESTION SEEMS TO BE, UNLESS I'M WRONG

20    HAVING READ THROUGH YOUR MATERIALS, WHETHER OR NOT THE PARTIAL

21    PROFESSIONAL SERVICES COLLUSION APPLIES OR DOESN'T APPLY, WHICH

22    IS THE MAJOR QUESTION.

23          THE ISSUE WITH RESPECT TO WHETHER OR NOT THERE IS THE

24    LANGUAGE OF THIS EXCLUSION PROVIDES FOR SOME CO-BENEFICIARY

25    ARGUMENT THAT THE PLAINTIFFS ARE MAKING, I HAVE TO SAY I'M NOT

1  SURE I SEE THAT AS BEING A LIKELY WINNING ARGUMENT.  WE CAN GO

2  THROUGH THE PARTICULAR ISSUES, BUT IT DOES STRIKE ME THAT THE

3  LACK OF THE EXCLUSION AS IT'S WRITTEN, THE REASONABLE

4  INTERPRETATION OF THAT EXCLUSION IS IT EXCLUDES THE ACTIVITIES

5  OF PLANNING VIS-A-VIS ITS CUSTOMERS WITH RESPECT TO THE SALES

6  OF SECURITIES AND THE LIKE, AND THAT THE -- WHAT'S LEFT WITH

7  RESPECT TO THE D&O POLICY ARE SECURITIES VIOLATIONS THAT THE

8  COMPANY ITSELF PERHAPS MIGHT FIND ITSELF SUBJECT TO, YOU KNOW,

9  INSIDER TRADING, WHATEVER ELSE THERE MIGHT BE.  BUT THE IDEA

10 THAT IN THE ACT OF PROVIDING PROFESSIONAL SERVICES, E-PLANNING

11 OBTAINS COMMISSIONS AND THE LIKE AND, THEREFORE, IS A

12 CO-BENEFICIARY, I DON'T THINK THAT THAT MAKES A WHOLE LOT OF

13 SENSE TO ME.

14          SO -- AND I ALSO AM AWARE OF JUDGE ARMSTRONG'S

15 DECISION IN THE *YOUNG VERSUS ILLINOIS UNION* CASE, WHICH IS

16 DEFINITELY ONE THAT SUPPORTS THE DEFENDANT'S POSITION, BUT I

17 RECOGNIZE IT'S NOT BINDING AUTHORITY ON ME; IT'S ONE OF MY

18 COLLEAGUE'S DECISIONS.

19          SO, OBVIOUSLY, THAT'S THE -- THOSE ARE THE ISSUES

20 THAT I THINK ARE THE MOST CENTRAL.  I UNDERSTAND THERE ARE

21 ADDITIONAL ARGUMENTS IN THE FORM OF PLAINTIFFS' ARGUMENTS THAT

22 THERE IS ALSO SOME MISMANAGEMENT, MISUSE OF FUNDS ACTIVITIES,

23 WHICH, ACCORDING TO THE PLAINTIFFS, WOULD, EVEN IF THE

24 EXCLUSION WERE TO APPLY, TAKE IT OUT OF THE RUBRIC OF

25 PROFESSIONAL SERVICES.  WE CAN TALK ABOUT THAT.

1        MY UNDERSTANDING, ALSO, IS THE ANDERSON PLAINTIFFS

2   HAVE SOME ADDITIONAL CLAIMS, THE 17200 AND JUDGMENT CREDITOR

3   CLAIM.  I DON'T KNOW IF -- OTHER THAN THOSE CLAIMS BEING THERE,

4   I'M NOT SURE IF THAT PUTS -- AND YOU CAN TELL ME -- IF THAT

5   PUTS THE ANDERSON PLAINTIFFS IN A DIFFERENT POSITION IN TERMS

6   OF THESE ARGUMENTS.

7        SO, THAT'S NOT -- IT'S NOT A TENTATIVE; IT'S MORE

8   SORT OF JUST MY GENERAL REACTION TO SOME OF THE ARGUMENTS THAT

9   I SAW.

10        SO WHY DON'T I START -- SEEING THE CONCERNS I HAVE

11   BEEN EXPRESSING ARE GOING TO THE PLAINTIFFS' SIDE, WHY DON'T I

12   START WITH PLAINTIFFS?

13        **MR. DONALDSON:**  OKAY.  FAIR ENOUGH.  THANK YOU, YOUR

14   HONOR.

15        LET ME ADDRESS THE FIRST ISSUE YOU RAISE, WHICH IS

16   THE PROPER INTERPRETATION OF THE EXCLUSION AND WHETHER OR NOT,

17   YOU KNOW, THE INTERPRETATION THAT WE'VE OFFERED IS A REASONABLE

18   ONE.  AND I UNDERSTAND YOUR HONOR'S INDICATED THAT YOU DO NOT

19   BELIEVE THAT THAT'S AN APPROPRIATE INTERPRETATION, BUT LET ME

20   TAKE A STAB AT IT, IF I MIGHT.

21        THE PROBLEM THAT I HAVE WITH THE INTERPRETATION

22   THAT'S PLACED ON THE PARTIAL PROFESSIONAL SERVICES EXCLUSION BY

23   THE DEFENDANTS IS THAT HOWEVER YOU LOOK AT IT ULTIMATELY, YOU

24   MUST COME TO THE CONCLUSION THAT IT REALLY DOES WIPE OUT AN

25   ENTIRE INSURING CLAUSE IN THE AGREEMENT, NAMELY, INSURING

1  CLAUSE C.  I THINK THE DEFENDANT IS --

2          **THE COURT:**  C BEING THE CORPORATE ACT BECAUSE THAT'S

3  LIMITED TO SECURITIES VIOLATIONS?

4          **MR. DONALDSON:**  YES, CORRECT.

5          **THE COURT:**  COULDN'T YOU HAVE -- I RECOGNIZE IT'S NOT

6  A PUBLICLY-HELD COMPANY.

7          **MR. DONALDSON:**  RIGHT.

8          **THE COURT:**  COULDN'T THERE CONCEIVABLY BE SOME

9  SECURITIES VIOLATIONS THAT THE COMPANY INCURS THROUGH HOWEVER

10 IT'S PROVIDING BONUSES, OPTIONS, WHATEVER ELSE THERE MAY BE

11 UNDER PERHAPS NOT THE 1934 SECURITIES ACT, BECAUSE I UNDERSTAND

12 IT WOULD BE PUBLIC COMPANIES, BUT I GUESS THE QUESTION IS, YOUR

13 PREMISE THAT IT WIPES EVERYTHING OUT EFFECTIVELY RENDERING IT A

14 NULLITY, C.

15         **MR. DONALDSON:**  RIGHT.

16         **THE COURT:**  COULDN'T WE CONCEIVE OF VIOLATIONS THE

17 COMPANY COULD BE SUBJECT TO THAT DON'T INVOLVE ITS PROVIDING OF

18 PROFESSIONAL SERVICES?

19         **MR. DONALDSON:**  WELL, LET ME RESPOND TO THAT BY

20 SAYING I THINK THE ONE THAT WOULD BE MOST CREATIVE IN COMING UP

21 WITH THAT WOULD BE MY ADVERSARIES, AND THEY OFFERED TWO

22 EXAMPLES IN THEIR BRIEF.  I WANT TO JUST SHOW WHY THOSE TWO

23 EXAMPLES DON'T WORK.

24         THE FIRST ONE THEY SAID IS, WELL, IT -- THERE COULD

25 BE A DERIVATIVE ACTION AND THAT THOSE ARE TRADITIONALLY

1    SECURITY LAWS VIOLATIONS.  WELL, THE FACT OF THE MATTER IS

2    DERIVATIVE ACTIONS ARE NOT SECURITIES LAW VIOLATIONS.  IN FACT,

3    THEY'RE ALMOST NEVER SECURITIES LAW VIOLATIONS.  SECURITIES LAW

4    VIOLATION, AS DEFINED IN THE POLICY, IS GENERALLY VIEWED AS A

5    TRANSACTION INVOLVING A PURCHASE OR SALE IN CONNECTION WITH A

6    SECURITY.

7              THE REASON YOU HAVE A DERIVATIVE CLAIM IS THERE IS NO

8    PURCHASE THAT OCCURRED IN CONNECTION WITH IT.  IT AFFECTS THE

9    WHOLE BODY OF STOCK.  SO IT'S A MISMANAGEMENT CLAIM; IT'S NOT A

10   SECURITIES CLAIM.

11             AND TO GIVE FURTHER SUBSTANCE TO THAT CONCLUSION,

12   YOUR HONOR MENTIONED THE *YOUNG* CASE, AND WHAT'S INTERESTING

13   ABOUT THE *YOUNG* CASE IS THAT -- AND, ALSO, THIS IS TRUE OF THE

14   *REINARDT* CASE, WHICH IS ALSO AN UNPUBLISHED DECISION THAT THE

15   DEFENDANT RELIED ON, AND IT'S ACTUALLY EVEN PROBABLY MORE

16   HELPFUL BECAUSE IT'S A LLOYD'S OF LONDON POLICY.

17             IN ANY EVENT, IF YOU LOOK AT THE EXCLUSION IN THE

18   *YOUNG* CASE, IT'S ESSENTIALLY THE SAME EXCLUSION AS OURS EXCEPT

19   IT HAS A CARVE-OUT AT THE END.  I'M LOOKING AT JUDGE

20   ARMSTRONG'S OPINION, THE SECOND PAGE.  I HAVE AN EXTRA COPY IF

21   IT WOULD BE HELPFUL TO THE COURT.

22             **THE COURT:**  ACTUALLY, IF YOU DO HAVE IT -- I HAD IT,

23   BUT I DON'T KNOW EXACTLY WHERE I PUT IT.

24             **MR. DONALDSON:**  YES, I DO.  IF I MIGHT HAND THAT UP?

25             (DOCUMENT TENDERED TO THE COURT.)

1          NOW, IF YOU LOOK AT THE EXCLUSION, IT'S DOWN THERE AT

2 THE BOTTOM OF THE FIRST PAGE, AND THEN IT CARRIES OVER TO THE

3 SECOND PAGE. AND THE CARRYOVER IS IMPORTANT, BECAUSE THIS

4 "PROVIDED" CLAUSE, WHICH I REFER TO AS A CARVE-OUT, IS NOT

5 INCLUDED IN THE EXCLUSION THAT WE HAVE IN OUR POLICY. BUT IT

6 SAYS:

7                 "...PROVIDED, HOWEVER, THIS

8           EXCLUSION SHALL NOT APPLY TO ANY SUCH CLAIM

9           BROUGHT DIRECTLY, DERIVATIVELY, OR OTHERWISE,

10           BY ONE OR MORE SECURITY HOLDERS OF THE

11           COMPANY IN THEIR CAPACITY AS SUCH."

12          NOW, I THINK IT'S FAIR TO CONCLUDE THAT IF YOU DID

13 NOT HAVE THIS CARVE-OUT, THE EXCLUSION WOULD PICK UP WHAT THE

14 CARVE-OUT'S TALKING ABOUT. THAT'S THE ONLY REASON YOU'D PUT IT

15 IN THERE. AND THAT SPECIFICALLY EXCLUDES FROM THE EXCLUSION

16 DERIVATIVE CASES.

17          WHAT THAT HAS TO MEAN, I THINK, IF YOU DID NOT HAVE

18 THAT CARVE-OUT, THEN A DERIVATIVE SUIT IS GOING TO BE PICKED UP

19 BY THE PROFESSIONAL SERVICES CLAUSE THAT EXISTS IN OUR POLICY.

20          **THE COURT:** A DERIVATIVE SUIT IS ONE EXAMPLE. HOW

21 ABOUT THE CALIFORNIA CORPORATIONS DEPARTMENT BRINGING A --

22 CONTENDING THAT THE CORPORPATION'S PLANNING HAD SOMEHOW

23 VIOLATED CALIFORNIA SECURITIES LAWS, OR, ALTERNATIVELY -- AND I

24 DON'T KNOW EXACTLY WHAT THE SEC'S JURISDICTION WOULD BE IN

25 LIGHT OF THE FACT THAT, AS I UNDERSTAND IT, IT'S A CLOSELY-HELD

1    ENTITY, BUT THE NOTION IS NOT SO MUCH FOR US TO TRY TO FIGURE

2    OUT SOME CLAIM THAT COULD BE BROUGHT AGAINST E-PLANNING, BUT

3    WHETHER OR NOT THERE IS SOMETHING BEING COVERED BY C.

4              **MR. DONALDSON:**  RIGHT.

5              **THE COURT:**  AND THAT'S YOUR POINT.

6              **MR. DONALDSON:**  RIGHT.

7              **THE COURT:**  AND SO AS LONG AS THERE'S ANYTHING --

8              **MR. DONALDSON:**  RIGHT.

9              **THE COURT:**  -- THEN C IS NO LONGER RENDERED A

10   NULLITY, AND YOU'RE -- THAT ARGUMENT IS NOT AS SALIENT ANYMORE.

11             **MR. DONALDSON:**  WELL, I'M NOT SURE I TOTALLY

12   SUBSCRIBE TO THE VIEW.  IF YOU COULD FIND ONE SMALL INSTANCE,

13   THAT IT WOULD THEREBY JUSTIFY AND NEGATE WHAT I WOULD ASSUME

14   WOULD BE THE REASONABLE EXPECTATIONS OF AN INSURED WHO'S BUYING

15   THIS POLICY.  THEY'RE NOT SITTING THERE AS AN EXPERT IN

16   SECURITIES LAWS AND FIGURING OUT, YOU KNOW, WHAT SMALL CLAIM

17   OUT THERE YOU CAN FIND.

18             BUT LET'S GO A LITTLE FURTHER ON THE POINT THAT YOU

19   RAISED.

20             THE SECOND EXAMPLE -- AGAIN, I'M RELYING ON MY

21   ADVERSARIES TO POINT OUT THE BEST CASE THEY HAVE.  THE SECOND

22   EXAMPLE THEY POINTED TO WAS AN SEC INVESTIGATION.  WELL, SEC

23   INVESTIGATIONS, IT'S HARD FOR ME TO SEPARATE AN SEC

24   INVESTIGATION FROM THE RENDERING OF PROFESSIONAL SERVICES.

25             IF EVERY CLAIM THAT'S BEEN ASSERTED IN OUR CASE IS

1  EMBRACED BY THE NOTION OF A PROFESSIONAL SERVICE BECAUSE A

2  BROKER-DEALER IS INVOLVED IN IT, I DON'T UNDERSTAND HOW YOU

3  COULD HAVE AN SEC INVESTIGATION THAT DIDN'T ALSO INVOLVE A

4  CLAIM OF PROFESSIONAL SERVICES, FOR EXAMPLE.

5      **THE COURT:**  IT'S EASY.  I SEE THEM ALL THE TIME.  I

6  MEAN, IF YOU HAD -- WE HAVE BEEN LIVING IN BACKDATED-OPTION

7  LAND.  THAT'S A GOOD EXAMPLE.  I MEAN, THE SEC HAS BEEN

8  ACTIVELY OVERSEEING BACKDATED OPTION ISSUES.  THAT DOESN'T HAVE

9  ANYTHING TO DO WITH THE PROVISION OF PROFESSIONAL SERVICES.

10      **MR. DONALDSON:**  IT DOESN'T HAVE ANYTHING?

11      **THE COURT:**  PROVIDING PROFESSIONAL SERVICES TO THIRD

12  PARTIES.  THAT'S BY DEFINITION BACKDATING AN OPTION TO AN

13  EXISTING OFFICER/DIRECTOR OF THE COMPANY.  NO THIRD PARTY IS

14  INVOLVED IN THAT, AND THE SEC IS VERY INTERESTED IN THAT

15  ACTIVITY.

16      **MR. DONALDSON:**  WELL, YOU KNOW --

17      **THE COURT:**  I'M NOT SAYING IT WOULD -- YOU KNOW THAT

18  WOULD WORK FOR PURPOSES OF THIS PARTICULAR CLOSELY-HELD

19  COMPANY, THE PREMISE THAT THE SEC WILL ONLY GET INVOLVED IF

20  THERE IS A THIRD-PARTY PROFESSIONAL SERVICES ACTIVITY, I DON'T

21  THINK THAT'S RIGHT.  IT'S PURCHASE OR SALES OF SUCH SECURITIES,

22  AND THE COMPANY CAN ISSUE SECURITIES BY WAY OF OPTIONS TO ITS

23  OWN COMPANY OFFICIALS.

24      **MR. DONALDSON:**  BUT THEY WOULD BE ISSUING THEM TO

25  SOME OTHER PERSON, CORRECT?

1     **THE COURT:**  PERHAPS DIRECTORS AND OFFICERS OF THE

2  COMPANY.

3     **MR. DONALDSON:**  RIGHT.

4     **THE COURT:**  SO IT'S A CORPORATE ACT, DOESN'T

5  IMPLICATE THE PROVIDING OF PROFESSIONAL SERVICES TO THIRD

6  PARTIES.

7     **MR. DONALDSON:**  BUT THAT'S -- THE WAY IT'S DEFINED IN

8  TERMS OF A CORPORATE, I DON'T BELIEVE IT REQUIRES THE THIRD

9  PARTIES.  IT'S JUST A SECURITIES LAW VIOLATION, I BELIEVE, IS

10  THE LANGUAGE.

11     **THE COURT:**  RIGHT.  THAT'S WHY C WOULDN'T BE A

12  NULLITY.  THAT'S THE POINT, I THINK.  THAT'S WHY YOUR ARGUMENT,

13  IF I UNDERSTOOD IT, WAS, WELL, IF THE EXCLUSION APPLIES, AND IT

14  APPLIES AS BROADLY AS BRIT CONTENDS IT DOES, THEN IT

15  EFFECTIVELY WIPES OUT C, BECAUSE C PROVIDES -- IS LIMITED --

16  THE COOPERATE ACT COVERAGE IS LIMITED TO SECURITIES VIOLATIONS.

17     **MR. DONALDSON:**  CORRECT.

18     **THE COURT:**  BUT WHAT I'M ASKING ABOUT IS, IT DOES

19  SEEM TO ME THAT THERE ARE SOME ACTIVITIES, CORPORATE ACTS, THAT

20  COULD BE SUBJECT -- OR COULD BE CHARACTERIZED AS A SECURITIES

21  VIOLATION THAT DOES NOT IMPLICATE PROFESSIONAL SERVICES TO

22  THIRD PARTIES.

23     SO ON THE NULLITY POINT -- AND I REALIZE THAT'S NOT

24  YOUR ONLY ARGUMENT, SO I DON'T WANT TO GET YOU TOO MUCH ON --

25  I'M NOT SUGGESTING, YOU KNOW, IF YOU CAN'T PREVAIL ON THAT

1  QUESTION THAT YOU DON'T HAVE OTHER ARGUMENTS.  PERHAPS WE DON'T

2  WANT TO SPEND TOO MUCH TIME --

3          **MR. DONALDSON:**  I APPRECIATE THAT.

4          LET ME JUST CONCLUDE BY STATING THAT I THINK THAT IN

5  EXAMINING, YOU KNOW, THE MEANING OF THE CLAUSE, I THINK WE NEED

6  ALSO TO KEEP IN MIND WHAT'S THE NATURE OF THE BUSINESS OF THIS

7  COMPANY?  YOU KNOW IT'S A BROKER/DEALER.  SO IF IT'S A

8  BROKER/DEALER, WHAT DOES IT DO?  I MEAN, THE LION'S SHARE, IF

9  NOT ALMOST ALL OF ITS BUSINESS, IS THE SALE OF SECURITIES TO

10  THIRD PARTIES.

11          SO WHILE IT IS TRUE THAT WE COULD -- I THINK YOUR

12  HONOR HAS IDENTIFIED A CIRCUMSTANCE WHERE, YES, THAT PROVISION

13  MIGHT HAVE APPLICABILITY BECAUSE THERE IS A POSSIBILITY OUT

14  THERE OF SOME SORT OF SECURITIES LAW VIOLATION THAT'S NOT

15  COMPLETELY ELIMINATED BY THE CLAUSE.  THE QUESTION BECOMES IS

16  IT FOR ALL PRACTICAL PURPOSES ELIMINATED.

17          AND I THINK IF YOU LOOK AT ONE OF THE CASES WE CITED,

18  THE *SAFECO CASE VERSUS ROBERT*.  I MEAN, THEY WERE TALKING THERE

19  MORE IN TERMS OF, YOU KNOW, YOU DON'T HAVE TO COMPLETELY

20  ELIMINATE EVERY SINGLE CONCEIVABLE POSSIBILITY; IT'S A

21  REASONABLE INTERPRETATION.  AND I WOULD SIMPLY SUBMIT THAT,

22  GIVEN THE NATURE OF E-PLANNING'S BUSINESS, THE ONLY THING THAT

23  THE INSURED WAS LOOKING TOWARD WHEN THEY READ THAT POLICY IS

24  LIKELY WHETHER OR NOT IT WAS GOING TO GIVE IT COVERAGE FOR

25  CLAIMS BY ITS CLIENTS.

1           BUT LET ME MOVE ON TO ANOTHER POINT, AND THAT'S THE

2    SECOND ONE, WHICH IS THE ISSUE OF WHETHER OR NOT ALL OF THE

3    CLAIMS THAT HAVE BEEN ASSERTED IN OUR ACTIONS INVOLVE

4    PROFESSIONAL SERVICES.

5           MY CASE -- AND I HAVE TO SAY BY WAY OF BACKDROP, THE

6    DIFFICULTY FOR YOUR HONOR IN THIS CASE WOULD BE THAT THIS IS --

7    DOES NOT INVOLVE JUST ONE SECURITY.  IT DOESN'T INVOLVE JUST

8    ONE KIND OF SECURITY.  IT INVOLVES THIS FAR-FLUNG GROUP OF

9    DIFFERENT KINDS OF SECURITIES.  SO ALL OF US HERE HAVE A LITTLE

10   BIT OF A DIFFERENT STORY TO TELL.

11          **THE COURT:**  THIS IS -- WHEN YOU'RE TALKING ABOUT

12   THAT, IT'S THE SECURITIZED INTEREST.  THIS GOES BACK TO AREI --

13          **MR. DONALDSON:**  YES.

14          **THE COURT:**  -- JOINT TENANCY IN COMMON.

15          **MR. DONALDSON:**  YES.

16          **THE COURT:**  SLASH --

17          **MR. DONALDSON:**  THEY WERE SELLING CORPORATE NOTES.

18   THEY WERE SELLING BUILDINGS HERE, THERE, AND THE OTHER.  SO,

19   CONSEQUENTLY, IT'S NOT ALL THE SAME.

20          BUT IN MY CASE, MY CLIENTS USED E-PLANNING FOR ONE

21   PURPOSE AND ONE PURPOSE ONLY, TO IDENTIFY AND SELL TO THEM A

22   TENANT-IN-COMMON INTEREST FOR PURPOSES OF TAX EXCHANGE

23   TRANSACTION.

24          IT WAS NEVER CONTEMPLATED THAT E-PLANNING WOULD BE

25   THEREAFTER INVOLVED IN ANY OF THE MANAGEMENT OF THOSE.  IN

1    FACT, THE PRIVATE PLACEMENT MEMORANDUM TALKS ABOUT WHO THE

2    MANAGEMENT WOULD BE, AND IT'S NOT E-PLANNING.

3           THE COMPLAINT, HOWEVER, ALLEGES THAT E-PLANNING AND

4    VARIOUS OF ITS OFFICERS, DIRECTORS, EMPLOYEES DID GET INVOLVED

5    LATER ON IN THE MANAGEMENT AND THAT THAT CLAIM WOULD NOT

6    THEREBY BE COVERED BY THE PROFESSIONAL SERVICES EXCLUSION

7    BECAUSE --

8           **THE COURT:**  SO THE AVERMENT IS THAT AT THE TYPE OF

9    THE ACQUISITION OF THE INTEREST, THAT THE -- YOUR CLIENTS

10   REASONABLY HAD -- THEY HAD NO REASON TO BELIEVE THAT E-PLANNING

11   WOULD HAVE AN ONGOING MANAGEMENT RESPONSIBILITY --

12          **MR. DONALDSON:**  CORRECT.

13          **THE COURT:**  -- FOR THESE PROPERTIES AND THESE

14   INTERESTS?

15          **MR. DONALDSON:**  CORRECT.

16          NOW, THE DEFENDANT'S RESPONSE IS, WELL, YOU KNOW,

17   MANAGING ASSETS IS A PROFESSIONAL SERVICE.

18          BUT THE FACT OF THE MATTER IS THAT YOU REALLY HAVE TO

19   LOOK AT THE PROFESSIONAL SERVICE THAT THE PARTICULAR ENTITY

20   THAT'S THE DEFENDANT IS ENGAGED IN IN ORDER TO DETERMINE

21   WHETHER OR NOT IT'S COVERED BY THE EXCLUSION.

22          NOW, THIS PARTICULAR POLICY IS, AS I THINK THE

23   DEFENDANTS POINT OUT, HAS NO DEFINITION OF PROFESSIONAL

24   SERVICES.  THERE'S ANOTHER INSURANCE POLICY, WE'VE REFERRED TO

25   IT AS THE E&O POLICIES, WHICH IS THE ERRORS AND OMISSIONS

1  POLICIES.  IT DOES.  IT TALKS ABOUT OFFERS AND SALES OF

2  SECURITIES, WHAT BROKERAGE FIRMS DO.  IT DOESN'T TALK AT ALL

3  ABOUT MANAGEMENT.

4          SO, I WOULD SUBMIT THAT THIS CASE COULD END UP BEING

5  RESOLVED IN A WAY, BASED ON LOOKING AT WHETHER OR NOT

6  PROFESSIONAL SERVICES OF THE TYPE CONTEMPLATED AT THE TIME OF

7  THE INVESTMENT WERE RENDERED OR WHETHER THERE'S A CLAIM THAT

8  WRONGDOING AROSE AS A RESULT OF SOMETHING OTHER THAN THE

9  RENDERING OF PROFESSIONAL SERVICES.

10          WE CITED THE *FOOD PRO* CASE -- IT'S A CALIFORNIA

11  APPELLATE COURT DECISION OF A FAIRLY RECENT VINTAGE -- WHERE A

12  PROFESSIONAL WAS IN -- GIVING SOME ADVICE IN A CONSTRUCTION

13  PROJECT, AND SOMEONE GOT INJURED, AND THE PERSON THAT GOT

14  INJURED SUED THE ARCHITECTURAL FIRM.

15          THE COURT ULTIMATELY CONCLUDED THE INJURY HAS TO

16  ARISE FROM THE RENDERING OF YOUR PROFESSIONAL SERVICES.  THE

17  FACT THAT YOU ARE A PROFESSIONAL, THE FACT THAT YOU ARE THERE,

18  THAT'S NOT ENOUGH.  THERE MUST BE A NEXUS, AND THE NEXUS HAS TO

19  BE BETWEEN THE INJURY YOU SUFFERED AND THE PROFESSIONAL

20  SERVICES THAT YOU WERE THERE TO RENDER.

21          E-PLANNING -- GUIDI IS ONE OF ITS OFFICERS AND

22  DIRECTORS; ARMITAGE, ONE OF ITS OFFICERS AND DIRECTORS, THEY

23  WERE THERE TO BE SELLING SECURITIES.  WE BELIEVE AND HAVE

24  ALLEGED THAT THEY GOT INVOLVED LATER BECAUSE THEY WERE THE MAIN

25  FINANCING ARM FOR AREI.  THEY GOT INVOLVED IN MANAGING THESE

1  PROJECTS, AFFECTING THE LEVERAGE OVER THE PROJECTS, MOVING

2  MONIES AROUND.  I MEAN, IT'S NO SECRET THAT --

3          **THE COURT:**  SO YOUR THEORY IS THAT PROFESSIONAL

4  SERVICES HAS TO BE UNDERSTOOD THROUGH THE LENS OF WHAT

5  PROFESSION THE THIRD PARTIES THINK YOU'RE IN?

6          **MR. DONALDSON:**  RIGHT.

7          **THE COURT:**  EFFECTIVELY?

8          **MR. DONALDSON:**  RIGHT.

9          **THE COURT:**  SO IF YOU HAPPEN TO THEN DO SOME THINGS

10  LATER ON THAT THE THIRD PARTY WOULDN'T NECESSARILY ASSUME YOU

11  WOULD BE IN THE BUSINESS OF DOING, YOU GO INTO A -- YOU KNOW,

12  YOU SEE YOUR DOCTOR, AND THEY'RE DOING SOMETHING FOR YOU, GIVE

13  YOU ANESTHESIA, AND THEY DECIDE TO FIX YOUR TEETH AT THE SAME

14  TIME, THAT'S A PROFESSIONAL SERVICE, BUT THE THIRD PARTY DIDN'T

15  ANTICIPATE THAT'S WHAT WAS GOING TO BE ADDRESSED.

16          **MR. DONALDSON:**  RIGHT.

17          **THE COURT:**  SO THAT'S KIND OF THE POINT.

18          **MR. DONALDSON:**  YEAH, THAT IS THE POINT.

19          **THE COURT:**  IS THERE ANY SUPPORT FOR THAT?  IT'S AN

20  ARGUMENT THAT MAKES SENSE, THEN THE QUESTION IS, IS ANYONE, IN

21  INTERPRETING A PROFESSIONAL SERVICES EXCLUSION -- AND YOU

22  MENTION THE ONE CASE.

23          **MR. DONALDSON:**  *FOOD PRO*.

24          **THE COURT:**  THAT'S THE CASE THAT I LOOK TO FOR

25  PURPOSES OF SEEING THAT DISTINCTION DEVELOPED?

1          MR. DONALDSON:  YES, I THINK --

2          THE COURT:  OKAY.

3          MR. DONALDSON:  I THINK IT'S THE BEST CASE THAT WE

4    LOCATED THAT CONCERNS THE MATTER.  THE PEOPLE WERE -- THE

5    ARCHITECTURAL FIRM WAS THERE FOR RENDERING A CERTAIN TYPE OF

6    SERVICE.  THEY OBSERVED SOMETHING THAT WAS OUTSIDE THE AMBIT OF

7    THEIR PROFESSIONAL RESPONSIBILITY, NAMELY A HOLE IN THE FLOOR.

8    THEY SUGGESTED THAT IT BE FIXED.  THIS GENTLEMAN FELL DOWN --

9    IT DIDN'T GET FIXED.  HE FELL DOWN AND GOT HURT.  HE SUED THEM.

10   THEY SAID, WAIT A MINUTE, THAT WASN'T OUR RESPONSIBILITY; WE

11   DIDN'T HAVE SUPERVISORY RESPONSIBILITY; TRUE, WE ARE

12   PROFESSIONALS, WE WERE THERE RENDERING PROFESSIONAL SERVICES,

13   BUT NOT THE ONES THAT GAVE RISE TO THE INJURY.

14          AT THE LOWER COURT THEY LOST.  SEVERAL COVERAGE FIRMS

15   ISSUED LETTERS OPPOSED TO THEIR POSITION, BUT, ULTIMATELY, THE

16   COURT OF APPEALS IN *FOOD PRO* CAME DOWN AND SAYS THERE HAS TO BE

17   THIS CAUSAL CONNECTION AND WE DON'T SEE IT HERE.

18          I THINK WE HAVE THAT IN THIS CASE, AT LEAST, AS I

19   SAID, EACH OF THESE CASES IS GOING TO HAVE TO BE EVALUATED

20   INDIVIDUALLY IN THIS REGARD BECAUSE THEY ARE NOT ALL THE SAME,

21   BUT IT'S CERTAINLY THE CASE IN OUR AMBROSIO ACTION.  SO FOR

22   THAT REASON, I WOULD THINK AT A MINIMUM, ALTHOUGH I BELIEVE IT

23   JUST BASED UPON WHAT'S ALLEGED, I THINK IT'S SUFFICIENT TO TAKE

24   IT OUTSIDE THE EXCLUSION CLAUSE, BUT AT A MINIMUM, WE SHOULD BE

25   ABLE TO FIND OUT, YOU KNOW, WHAT SERVICES WERE RENDERED AND HOW

1  HAS THAT CLAUSE BEEN --

2        **THE COURT:**  THAT'S YOUR ALTERNATIVE DISCOVERY

3  ARGUMENT, EFFECTIVELY?

4        **MR. DONALDSON:**  YEAH.  CORRECT.

5        **THE COURT:**  OKAY.  LET ME HEAR FROM THE BRIT SIDE.

6        **MR. NARBAITZ:**  THANK YOU, YOUR HONOR.

7        FIRST, STARTING OFF WITH THAT LAST STATEMENT ABOUT

8  FINDING OUT WHAT SERVICES WERE PROVIDED, I THINK IT BEARS

9  REMINDING THAT THE PLAINTIFFS HERE WERE ALL THE UNDERLYING

10  CLAIMANTS.  I THINK THEY KNOW WHAT SERVICES WERE PROVIDED TO

11  THEIR CLIENTS.  I THINK THEY KNOW WHAT THEY WENT TO GET.  AND

12  SO I DON'T UNDERSTAND WHAT THEY COULD POSSIBLY NEED WHEN WHAT

13  YOU HAVE HERE IS --

14        **THE COURT:**  THEY'RE THE ONES THAT ARE AVERING THAT

15  THEY HAD NO REASON TO BELIEVE THERE WOULD BE ANY ONGOING

16  MANAGEMENT ACTIVITY ON THE PART OF E-PLANNING.  SO THEIR

17  AVERMENT -- I DON'T KNOW IF IT WOULD BE PROVEN TO BE TRUE DOWN

18  THE LINE, BUT THEY'RE SAYING THE PROFESSIONAL SERVICES WE

19  CONTRACTED FOR WERE BROKER/DEALER-TYPE SERVICES; WE DIDN'T

20  THINK THERE WOULD BE ANY ACTIVITIES -- AND I HAVE TO ACCEPT

21  THEIR AVERMENTS AS TRUE AT THIS POINT.

22        **MR. NARBAITZ:**  CERTAINLY, YOUR HONOR, AND I THINK

23  PART OF THOSE AVERMENTS INVOLVE LOOKING AT NOT ONLY WHAT'S

24  SPECIFICALLY PLED IN THEIR EIGHT COVERAGE BAD FAITH LAWSUITS

25  AND THIS ACTION, WHICH SOLELY TALK ABOUT E-PLANNING AS BEING A

1  BROKER/DEALER OF SECURITIES, AS SOMEBODY THAT THEY WENT TO FOR

2  INVESTMENT ADVISORY AND BROKERAGE SERVICES, THAT THEY RELIED

3  UPON REPRESENTATIONS BY E-PLANNING AND ITS REPRESENTATIVE THAT

4  E-PLANNING AND ITS REPRESENTATIVES PROMOTED SECURITIES THAT

5  THEY PURCHASED INTERESTS OF.  THERE IS NOTHING ELSE ABOUT

6  MANAGEMENT.  AND I AGREE YOUR HONOR HAS TO ACCEPT THOSE

7  ALLEGATIONS AS TRUE, BUT THERE'S NOTHING ABOUT MANAGEMENT IN

8  THOSE ALLEGATIONS.

9            BUT TAKING A STEP FURTHER BACK, I THINK IT -- I AGREE

10  WITH COUNSEL THAT IT DOES BEAR LOOKING VERY CLOSELY AT THE

11  ALLEGATIONS OF THE UNDERLYING SECURITIES CASES, BECAUSE COUNSEL

12  SUGGESTS IN THE JOINT OPPOSITION THAT THERE ARE THESE OTHER

13  TYPES OF MANAGEMENT-TYPE ACTIVITIES, SUCH AS COMMINGLING THE

14  CLAIMANTS' FUNDS AND OVERLEVERAGING LOANS.  BUT EVEN IN THOSE

15  UNDERLYING LAWSUITS, IN THOSE UNDERLYING COMPLAINTS, IT VERY

16  CLEARLY TALKS ABOUT AREI AS THE OWNER/MANAGER/DEVELOPER OF THE

17  SECURITIES VERSUS E-PLANNING, E-PLANNING BEING THE

18  BROKER/DEALER, THE ENTITY THAT PROVIDED INVESTMENT ADVISORY AND

19  BROKERAGE SERVICES.

20            I UNDERSTAND THERE ARE A WHOLE LOT OF DEFENDANTS IN

21  THOSE UNDERLYING ACTIONS, AND AT TIMES IT KIND OF TALKS VERY

22  GENERALLY ABOUT WHAT EVERYONE DOES, BUT WHEN YOU LOOK VERY

23  SPECIFICALLY AT THE ALLEGATIONS THAT COUNSEL TALKS ABOUT IN THE

24  JOINT OPPOSITION, IT'S NOT SAYING E-PLANNING COMMINGLED ASSETS

25  OR E-PLANNING OVERLEVERAGED THE LOANS.  IT'S SAYING THAT

1  E-PLANNING FAILED TO DISCLOSE THAT THE ASSETS HAD BEEN

2  COMMINGLED, THAT E-PLANNING FAILED TO ADVISE THE CLAIMANTS

3  BEFORE THEY INVESTED THEIR MONEY THAT THERE HAD BEEN THE SECOND

4  LOAN ON THE PROPERTY, AND, THEREFORE, IT WAS OVERLEVERAGED.

5        **THE COURT:**  YOU CHARACTERIZE THAT AS PART OF THE

6  PROFESSIONAL SERVICES OF SELLING THESE INTERESTS?

7        **MR. NARBAITZ:**  CORRECT.

8        **THE COURT:**  BECAUSE, AT WORST, YOUR PERSPECTIVE IS

9  IT'S IN THE ACT OF SELLING THESE THAT YOU INTERPRET THEIR

10  AVERMENTS AS SAYING THEY DIDN'T DISCLOSE, THEY DIDN'T TELL US

11  THEY WERE GOING -- YOU WERE GOING TO CONTINUE TO BE INVOLVED?

12        **MR. NARBAITZ:**  CORRECT, YOUR HONOR.

13        AND SO I GUESS THE POINT IS -- FIRST OF ALL, NOT ALL

14  OF THE UNDERLYING ACTIONS INVOLVE THOSE TYPES OF ALLEGATIONS

15  WHICH COUNSEL CLAIMS TAKES IT OUTSIDE THE EXCLUSION, ONLY A

16  COUPLE DO.  BUT, IN ANY EVENT, EVEN FOR THE ONES THAT THEY DO,

17  IT'S STILL WITHIN -- IT STILL ARISES OUT OF THE PROFESSIONAL

18  SERVICES EXCLUSION.

19        I THINK *FOOD PRO* IS ACTUALLY A VERY APPROPRIATE CASE

20  TO DISCUSS, BECAUSE IN *FOOD PRO* WHAT THE COURT DID WAS LOOK

21  AT -- THE COURT SAID, YOU DON'T LOOK AT THE INSTRUMENTALITY OF

22  THE INJURY; WHAT YOU LOOK AT IS WHETHER IT AROSE OUT OF THE

23  PROFESSIONAL SERVICES, AS MY ADVERSARY SAID, WHETHER OR NOT

24  THERE'S A NEXUS.

25        THERE YOU HAD A SITUATION WHICH IS DISTINGUISHABLE

1   FOR A NUMBER OF REASONS, INCLUDING THAT IT WAS A CGL POLICY

2   THAT HAS A DUTY TO DEFEND, WHICH OPENS THE CAN OF WORMS OF THE

3   BROAD POTENTIAL FOR COVERAGE.  HERE WE ARE DEALING WITH AN

4   INDEMNITY POLICY; ONE OF THE THINGS THAT IT INDEMNIFIES IS

5   DEFENSE COSTS INCURRED, BUT IT IS NOT A DUTY-TO-DEFEND POLICY.

6          BUT, IN ANY EVENT, THERE THE COURT -- THE REASON WHY

7   THE APPELLATE COURT OVERRULED THE TRIAL COURT IS BECAUSE THERE

8   WAS AT LEAST A POTENTIAL -- BASED ON FOOD PRO'S SIDE OF THE

9   STORY, THERE WAS AT LEAST A POTENTIAL THAT THERE WAS COVERAGE

10  BECAUSE THE FOOD PRO GUYS WERE SAYING, HEY, LOOK, WE JUST

11  CONSULTED, WE DIDN'T TELL THIS CONTRACTOR OR SUBCONTRACTOR WHAT

12  TO MOVE OR WHAT TO DO; WE ADVISED THERE WAS A PROBLEM WITH A

13  HOLE, BUT NONE OF THAT WAS OUR RESPONSIBILITY; SO THE FACT THAT

14  THIS ONE GENTLEMAN FELL THROUGH A HOLE AND INJURED HIS LEG HAS

15  NOTHING AT ALL TO DO WITH THE PROFESSIONAL CONSULTING SERVICES

16  THAT WE WERE THERE TO PROVIDE.

17          **THE COURT:**  COULD YOU GO BACK TO THE ARGUMENT YOU

18  STARTED WITH, AND THAT'S THE CONTENTION BY THE PLAINTIFFS' SIDE

19  THAT IF I WERE TO ADOPT YOUR POSITION, THAT WOULD BE RENDERING

20  INSURING CLAUSE C A NULLITY, IN THAT WE HAVE ALL THOSE RULES OF

21  CONSTRUCTION THAT IF AN INTERPRETATION IS POSSIBLE THAT HAS ALL

22  PROVISIONS OF THE CONTRACT OPERATIVE, WE GO WITH THAT

23  INTERPRETATION.  SO DO YOU WANT TO COMMENT ON THAT?

24          **MR. NARBAITZ:**  CERTAINLY, YOUR HONOR.

25          SO, I MEAN, I AGREE WITH THE COURT.  THERE ARE A

1  NUMBER OF TYPES OF SECURITIES LAWS VIOLATIONS OUT THERE THAT DO

2  NOT INVOLVE SERVICES PROVIDED TO THIRD PARTIES.

3         **THE COURT:** ARE THEY FOR PURPOSES OF THESE KIND OF

4  ENTITIES -- I MEAN, IF IT WAS A PUBLIC COMPANY, I COULD COME UP

5  WITH A LONG LIST. BUT THIS IS NOT A PUBLIC COMPANY, CORRECT?

6         **MR. NARBAITZ:** IT'S MY UNDERSTANDING IT WAS NOT A

7  PUBLIC COMPANY.

8         YOUR HONOR, EVEN PRIVATELY-HELD CORPORATIONS HAVE

9  OFFICERS AND DIRECTORS AND HAVE ISSUES WHERE THOSE OFFICERS AND

10  DIRECTORS NEED TO BE INDEMNIFIED FOR THEIR ACTS IN THEIR

11  CAPACITY AS SUCH.

12         AND I MEAN --

13         **THE COURT:** IT DOES MEAN, THOUGH, WOULD YOU AGREE,

14  THAT WHAT'S COVERED THEN UNDER C IS PRETTY NARROW IF YOU'RE

15  TALKING ABOUT A COMPANY OF THIS -- AN ENTITY OF THIS TYPE,

16  BECAUSE YOU'RE REALLY NOT -- THE GARDEN-VARIETY SECURITIES

17  VIOLATIONS THAT SHAREHOLDER DERIVATIVE ACTIONS AND THE LIKE ARE

18  PROBABLY NOT A LIKELY EVENT IF YOU'VE GOT JUST A FEW OWNERS IN

19  A SOME KIND OF A LLC OR SOMETHING, AND, SO, IT'S A PRETTY

20  NARROW AREA OF COVERAGE THE POLICYHOLDER'S BUYING INTO.

21         **MR. NARBAITZ:** I DON'T KNOW THAT I WOULD AGREE WITH

22  THAT STATEMENT, YOUR HONOR, BECAUSE IF, INSTEAD OF PROVIDING

23  BROKERAGE ADVISORY SERVICES, IF E-PLANNING MADE TENNIS SHOES

24  AND THEY WERE A PRIVATELY-HELD COMPANY, IN THOSE SITUATIONS

25  THEY'RE STILL GOING TO HAVE ALL THE SAME POTENTIAL DIRECTOR AND

1  OFFICER-TYPE CLAIMS THAT COULD BE BROUGHT AGAINST A

2  PRIVATELY-HELD COMPANY.

3          THE FACT THAT THERE HAPPENS TO BE AN EXCLUSION FOR

4  PROFESSIONAL SERVICES AND THE PROFESSIONAL SERVICES HERE

5  HAPPENS TO BE THE SALE OF SECURITIES, THERE'S STILL THAT SAME

6  UNIVERSE OF THINGS -- FOR EXAMPLE, IF YOU LOOK AT THE *MBIA*, THE

7  SECOND CIRCUIT DECISION CITED IN OUR REPLY BRIEF, WHERE YOU

8  HAVE THE NEW YORK ATTORNEY GENERAL'S OFFICE DOING AN

9  INVESTIGATION OF A BANK.  I MEAN, THAT'S EXACTLY THE TYPE OF

10 SITUATION THAT THIS POLICY IS MEANT TO RESPOND TO.

11         WHAT THIS POLICY IS NOT MEANT TO RESPOND TO IS

12 PROBLEMS IN THE PROVISION -- PERFORMANCE OF PROFESSIONAL

13 SERVICES.  THAT IS THE PURPOSE OF THE ERRORS AND OMISSIONS

14 POLICY, AND COUNSEL HAS ALREADY SEIZED UPON THAT POINT --

15         **THE COURT:**  ANYONE ELSE ON THE PLAINTIFFS' SIDE THAT

16 WANTS TO SAY -- I'M NOT SUGGESTING THAT YOU NEED TO, BUT I JUST

17 WANT TO MAKE SURE IF IN ANY OF THE OTHER CASES ANYONE WANTS TO

18 WEIGH IN.

19         OKAY.  ANYTHING FURTHER?

20         **MR. DONALDSON:**  YEAH, A COUPLE OF OBSERVATIONS, YOUR

21 HONOR, IF I MIGHT.

22         WHAT I MEANT BY THE QUESTION OF -- MY STATEMENT AT

23 THE END ABOUT AT A MINIMUM WE NEED TO LOOK AT THE ISSUE OF

24 PROFESSIONAL SERVICES, WHAT I MEANT BY THAT IS THEY HAVE

25 DEFINED PROFESSIONAL SERVICES BY LOOKING AT A BUNCH OF CASES

1  AND SAYING, LET'S TAKE THE BROADEST POSSIBLE INTERPRETATION AND

2  USE THAT TO DETERMINE WHAT HAPPENED AT E-PLANNING.

3          AND I'M SAYING IF YOUR HONOR IS NOT PREPARED TO

4  SIMPLY DENY THE MOTION TO DISMISS, THAT AT A MINIMUM WE SHOULD

5  HAVE AN OPPORTUNITY TO DETERMINE WHAT THE SCOPE OF THE

6  PROFESSIONAL SERVICES ARE BECAUSE WE DON'T HAVE THAT DETERMINED

7  AT ALL, I DON'T BELIEVE.

8          **THE COURT:**  AND THE DISCOVERY YOU WOULD DO TO

9  DETERMINE THAT -- I MEAN, WE ALL, I THINK, AGREE THAT AT THE

10  END OF THE DAY THESE ARE LEGAL ISSUES TO INTERPRET THE MEANING

11  OF THESE CONTRACTUAL PROVISIONS, INSURANCE CONTRACT PROVISIONS.

12          **MR. DONALDSON:**  YES.

13          **THE COURT:**  AND I THINK THERE'S A GOOD DEAL OF LAW

14  THAT CAN BE DONE ON A MOTION TO DISMISS, BECAUSE I HAVE THE

15  CONTRACT, THE INSURANCE CONTRACT.

16          SO, WHAT WOULD THE DISCOVERY FLESH OUT FOR US?  WHAT

17  THE NEGOTIATIONS --

18          **MR. DONALDSON:**  YES.

19          **THE COURT:**  WHY DON'T I JUST ASK THE QUESTION?  WHAT

20  WOULD WE POTENTIALLY LEARN FROM DISCOVERY ON THE MEANING OF THE

21  PROFESSIONAL SERVICES?

22          **MR. DONALDSON:**  WELL, FOR EXAMPLE, THE E&O POLICY HAS

23  A DEFINITION OF PROFESSIONAL SERVICES, AND THE DEFINITION IS:

24  THE PURCHASE, SALE, OR SERVICING OF SECURITIES; THE PURCHASING

25  AND SERVICING OF LIFE INSURANCE; PROVIDING BROKERAGE SERVICES;

1  PROVIDING ECONOMIC ADVICE; PROVIDING FINANCIAL PLANNING ADVICE.

2  IT HAS NOTHING TO DO WITH MANAGEMENT.  THE POINT IS --

3           **THE COURT:**  THAT'S THE E&O POLICY?

4           **MR. DONALDSON:**  YES, THAT'S CORRECT.

5           **THE COURT:**  WHAT'S THE D&O POLICY --

6           **MR. DONALDSON:**  THE D&O POLICY IS SILENT, BUT THESE

7  WERE ISSUED AROUND THE TIME.  WHAT WOULD A REASONABLE INSURED

8  BY AN OBJECTIVE STANDARD EXPECT THE TERM "PROFESSIONAL

9  SERVICES" TO MEAN?  I WOULD SUBMIT IT WOULD BE MORE LIKELY THAT

10 THEY WOULD LOOK TO THIS DEFINITION THAN TO THE BROADER ONE THAT

11 THE DEFENDANTS HAVE TRIED TO CREATE BY VIRTUE OF LOOKING AT

12 CASE LAW.  SO --

13          **THE COURT:**  OF COURSE, IN ORDER FOR THAT TO BE

14 RELEVANT, I WOULD HAVE TO ALREADY HAVE BOUGHT INTO THE NOTION

15 THAT MANAGEMENT -- YOUR ARGUMENT THAT MANAGEMENT ACTIVITIES ARE

16 SOMEHOW OUTSIDE OF PROFESSIONAL SERVICES --

17          **MR. DONALDSON:**  YES.

18          **THE COURT:**  -- BECAUSE, OTHERWISE, I'M NOT SURE

19 DISCOVERY WOULD BE AT ALL REVEALING.

20          **MR. DONALDSON:**  WELL, YOU COULD SAY, I DON'T KNOW

21 WHETHER IT IS -- WHETHER IT IS OR NOT, BECAUSE I DON'T KNOW

22 WHAT THE PROPER DEFINITION OF "PROFESSIONAL SERVICES" IS FOR

23 PURPOSES OF THIS CASE AND THIS POLICY.  BECAUSE WHAT THE

24 DEFENDANTS ARE ASKING BE DONE IS THAT YOU COME UP WITH A

25 DEFINITION THAT'S UNGIRDED BY ANYTHING RELATED TO WHAT THE

1  PARTIES THOUGHT AT THE TIME THEY BOUGHT THIS POLICY, WHAT WAS

2  NEGOTIATED, WHAT WAS ACTUALLY DONE BY E-PLANNING.

3          SO THAT'S REALLY WHAT I'M TALKING ABOUT, DEFINING THE

4  TERM.

5          **THE COURT:**  WHAT KIND OF DISCOVERY -- TO GET AT THAT

6  QUESTION, WHAT WOULD YOU DO?  YOU'D NOTICE THE DEPOSITION OF

7  THE INSURANCE AGENT?  I MEAN, WHO -- I'M JUST TRYING THINK HOW

8  YOU WOULD GET AT THIS ISSUE.

9          **MR. DONALDSON:**  ONE THING I'D WANT TO KNOW IS WHERE

10  THIS EXCLUSION CAME FROM AT LLOYD'S.  THIS IS AN UNUSUAL

11  EXCLUSION IN THE SENSE, IF YOU NOTE -- WE HAVEN'T TALKED ABOUT

12  THIS.  THIS IS CALLED A PARTIAL PROFESSIONAL SERVICES

13  EXCLUSION.  I HAVEN'T FIGURED OUT WHAT THAT MEANS.  THEY DIDN'T

14  INDICATE IN THEIR BRIEF WHAT IT MEANS.

15          **THE COURT:**  PARTIAL IN THE SENSE IT SORT OF FLOWS

16  WITH THEIR OTHER ARGUMENT, WHICH IS THIS COVERS THIRD PARTY

17  TRANSACTIONS.  SO, IF THERE WAS PROFESSIONAL SERVICES IN THE

18  SENSE OF SOMETHING WITHIN THE COMPANY THAT -- LET'S USE MY

19  OPTIONS EXAMPLE.  IF THERE'S DISCUSSIONS IN THERE AND THERE'S A

20  TRANSFER OF AN OPTION TO A DIRECTOR/OFFICER OF THE COMPANY,

21  THAT'S ARGUABLY A PROFESSIONAL SERVICE, BUT IT'S PART -- IT

22  ISN'T COVERED BY THAT EXCLUSION.

23          SO, I MEAN, I DON'T THINK THERE'S ANY INCONSISTENCY

24  IN THE USE OF THE TERM "PARTIAL," BUT I UNDERSTAND YOU THINK

25  IT'S AMBIGUOUS.

1      **MR. DONALDSON:** IT'S CERTAINLY POSSIBLE. IT'S JUST

2  WE'VE NOTICED NOW SEVERAL DIFFERENT PROFESSIONAL SERVICES

3  EXCLUSIONS IN THESE CASES FROM LLOYD'S, AND THEY OBVIOUSLY USE

4  ONE FOR ONE THING AND ANOTHER FOR ANOTHER, AND IT SEEMS TO BE

5  RELEVANT TO THE QUESTION OF, GIVEN THAT THEY'RE ASKING THAT A

6  BROAD DEFINITION OF PROFESSIONAL SERVICES BE APPLIED HERE

7  WITHOUT REGARD TO WHAT THE PARTIES DID, BUT JUST BASED ON THE

8  CASE LAW, IT SEEMS TO ME THAT WOULD BE RELEVANT INFORMATION.

9      LET ME ALSO JUST NOTE THAT ON THIS ISSUE ABOUT

10  WHETHER OR NOT THERE'S ANY ALLEGATION IN THE COMPLAINT THAT

11  E-PLANNING WAS INVOLVED IN POST-SALE MANAGEMENT ACTIVITY THAT

12  ENDED UP HARMING THE PLAINTIFFS. AT PARAGRAPH 40 OF THE

13  COMPLAINT THAT WAS FILED IN MARIN COUNTY ON BEHALF OF MY

14  CLIENTS, WHICH IS EXHIBIT D TO MR. FOX'S DECLARATION, IT

15  STATES:

16      "APPARENTLY AREI AND ITS

17      AFFILIATES -- "

18      AND IF YOU READ EARLY ON, AFFILIATES IS REFERRING AS

19  WELL TO E-PLANNING, SINCE THEY WERE THE SOLE FINANCING ARM AT

20  THE TIME AND THEY HAD CO-OVERLAPPING OWNERSHIP, LET'S SAY.

21      IN ANY EVENT, IT SAYS:

22      "APPARENTLY, AREI AND ITS

23      AFFILIATES WOULD USE WHATEVER CASH WAS

24      AVAILABLE FROM THE VARIOUS SYNDICATIONS THEY

25      ORGANIZED, WITHOUT REGARD TO ITS SOURCE, TO

1              PAY THE MOST PRESSING OBLIGATIONS OF THE

2              AREI-SPONSORED INVESTMENTS.  IN THIS RESPECT,

3              ARMITAGE..."

4          WHICH THEY ADMIT -- WHO THEY ADMIT IS AN OFFICER AND

5    DIRECTOR OF AREI.

6                    "...PURPORTEDLY MAINTAINED A

7              'CRITICAL PAY LIST' ON BEHALF OF AREI."

8          SO WHEN THEY SAY ALL WE'RE TALKING ABOUT IS

9    DISCLOSURE AND THE LACK OF DISCLOSURE TO OUR CLIENTS, THAT'S

10   REALLY NOT AN ACCURATE CHARACTERIZATION OF THE COMPLAINT, AND

11   THAT'S WHAT I MEAN ABOUT TAKING IT OUTSIDE THE AMBIT OF WHAT I

12   BELIEVE IS A FAIR DEFINITION OF PROFESSIONAL SERVICES IN THIS

13   CASE.  IF YOUR HONOR WERE TO RULE THAT THAT EXCLUSION IS, AS

14   YOU'VE INDICATED, IT WOULD SEEM TO ME IT WOULD STILL TAKE IT

15   OUTSIDE THAT AMBIT, AND, FOR THAT PURPOSE, THE EXCLUSION WOULD

16   NOT BE RELEVANT.

17             **THE COURT:**  LET ME ASK YOU, MR. NARBAITZ --

18             **MR. NARBAITZ:**  "NARBAITZ," YES, YOUR HONOR.

19             **THE COURT:**  -- IF YOU COULD COMMENT ON THE DISCOVERY

20   POINT, WHY -- AT THE VERY LEAST, WHY SHOULDN'T THERE BE SOME

21   DISCOVERY INTO THE BOUNDARIES OF WHAT IS MEANT BY "PROFESSIONAL

22   SERVICES"?

23             **MR. NARBAITZ:**  WELL, I THINK, YOUR HONOR, THE KEY TO

24   REMEMBER IS THAT DISCOVERY ON THIS ISSUE, YOU DON'T CROSS THAT

25   BRIDGE UNLESS THERE'S AN AMBIGUITY IN THE POLICY, AND THE PLAIN

1   READING OF THE POLICY, I THINK, IS VERY CLEAR.

2           THE CALIFORNIA SUPREME COURT HELD, I THINK IT WAS A

3   COUPLE OF DECADES AGO, IN THE *HOLLINGSWORTH* DECISION CITED IN

4   OUR PAPERS THAT THE ABSENCE OF A DEFINITION OF THE TERM

5   "PROFESSIONAL SERVICES" DOES NOT RENDER THE POLICY AMBIGUOUS IN

6   ANY WAY.

7           AND CALIFORNIA CASE LAW HAS LONG DEFINED THAT TERM AS

8   MEANING PROFESSIONAL SERVICES ARISING OUT OF A VOCATION, A

9   CALLING, SOMETHING OF THAT NATURE.  SO THERE'S NO AMBIGUITY.

10          AND THE COURT AS A MATTER OF LAW, LOOKING AT THE

11  ALLEGATIONS OF THE UNDERLYING ACTIONS AND LOOKING AT THE

12  LANGUAGE OF THE CONTRACT, CAN FIND THAT THIS IS A PLAIN AND

13  CLEAR EXCLUSION.  THERE'S NO AMBIGUITY THERE.

14          OTHER THAN SEEMING TO SUGGEST THAT THE TERM "PARTIAL"

15  MAKES THIS EXCLUSION AMBIGUOUS, THERE'S REALLY NO OTHER

16  AMBIGUITY THAT PLAINTIFFS EVEN TALK ABOUT IN THEIR JOINT

17  OPPOSITION.  THERE'S CERTAINLY NO CONFUSING WORDS.  SO I REALLY

18  DON'T KNOW WHERE THEY GET THE AMBIGUITY ARGUMENT.

19          **THE COURT:**  I THINK THEY SAY "PROFESSIONAL SERVICES"

20  IS AMBIGUOUS.

21          **MR. NARBAITZ:**  BUT IT'S DEFINED AS ARISING OUT OF A

22  HIGHER CALLING.  THAT'S DEFINED BY CASE LAW.  SO IT'S NOT

23  REALLY.

24          BUT I THINK THAT EVEN IF YOUR HONOR WERE TO CONSTRUE

25  THE WORDS "ARISING OUT OF" IN THAT COURT-CONSTRUED DEFINITION

1  OF "PROFESSIONAL SERVICES" AS NARROWLY AS POSSIBLE, ALL OF THE

2  CONDUCT ALLEGED IN THE UNDERLYING ACTIONS HERE ARISE OUT OF THE

3  PROFESSIONAL SERVICES THAT E-PLANNING PROVIDED.

4       I MEAN, IT'S LUDICROUS TO SUGGEST THAT THERE WAS SOME

5  KIND OF BREACH OF FIDUCIARY DUTY OR BREACH OF CONTRACT THAT HAD

6  NOTHING AT ALL TO DO WITH THE FACT THAT THESE CLAIMANTS CAME TO

7  E-PLANNING TO PURCHASE SHARES OF SECURITIES.

8       AND, YOUR HONOR, IF I COULD ADDRESS THE COURT VERY

9  BRIEFLY ON THE UNDERLYING COMPLAINT THAT COUNSEL JUST READ

10  FROM, TALKING ABOUT HOW THERE WERE THESE MANAGEMENT SERVICES

11  OTHER THAN SOMETHING THAT HAD TO DO WITH INVESTMENT ADVISORY

12  SERVICES, THAT IS FROM EXHIBIT D.  IT'S DOCUMENT 9-7 IN THE LOW

13  NUMBER CASE HERE, THE AMBROSIO CASE.

14       AND I WOULD NOTE THAT IN THAT ACTION, E-PLANNING IS

15  NOT A DEFENDANT IN THAT ACTION.  GUIDI, ARMITAGE, NONE OF THOSE

16  PLAYERS WERE DEFENDANTS IN THAT ACTION, AND THE REASON FOR THAT

17  IS BECAUSE THOSE PARTIES, BECAUSE THEY PROVIDED FINANCIAL

18  SERVICES, THESE BROKERAGE SERVICES, THEY WEREN'T THE SUBJECT OF

19  THE CIVIL ACTION; THEY WERE SUBJECT OF THE FINRA ARBITRATION.

20       AND SO THEY'RE NOT EVEN PARTIES HERE.  SO WHEN HE IS

21  TALKING ABOUT AREI AND ITS AFFILIATES HERE, THERE ARE NO

22  ALLEGATIONS ABOUT ANY OF THOSE E-PLANNING ENTITIES.

23       HOWEVER, I WOULD NOTE THAT KIND OF THE

24  CORRESPONDING -- OKAY -- THE PRECEDING PARAGRAPH TALKS ABOUT

25  HOW DEFENDANTS, WHICH IS, AGAIN, NOT E-PLANNING, IT'S AREI AND

1   ITS AFFILIATES, DEFENDANTS, AND THE FINRA RESPONDENTS, WHICH

2   ARE THE E-PLANNING ENTITIES AND AGENTS, KNEW OR SHOULD HAVE

3   KNOWN AND FAILED TO DISCLOSE -- AND THIS IS PARAGRAPHS 37 AND

4   38 OF THAT VERY SAME COMPLAINT.

5          SO, AGAIN, IT GOES BACK TO WHAT I SAID EARLIER.

6   THESE MANAGEMENT ISSUES AND STUFF, AS FAR AS THE E-PLANNING

7   DEFENDANTS, IT ONLY HAS TO DO WITH THEIR FAILURE TO DISCLOSE IN

8   PROVIDING THEIR INVESTMENT ADVISORY AND BROKERAGE SERVICES.  IT

9   DOESN'T HAVE TO DO WITH MANAGING AND OPERATING THE SECURITIES.

10  THAT'S NOT WHAT THEY DID HERE.

11         **MR. FOX:**  CAN I --

12         **THE COURT:**  LET ME JUST MAKE A COMMENT.

13         I WAS NOTICING AS I WAS LOOKING AT IT AGAIN, JUDGE

14  ARMSTRONG'S OPINION, WHICH YOU ARE ANXIOUS FOR ME TO FOLLOW,

15  THAT WAS ON SUMMARY JUDGMENT.  SO WHILE I AGREE WITH YOU THAT I

16  THINK THE LAW IN THE APPROPRIATE CASE IS SUCH THAT I CAN MAKE

17  LEGAL DECISIONS ABOUT THE VIABILITY OF THE CLAIM ON A RULE 12

18  MOTION, THAT'S NOT WHAT SHE DID IN *YOUNG*.  SO THERE WAS SOME

19  OPPORTUNITY TO DEVELOP THE ISSUES IN THIS CASE.

20         **MR. NARBAITZ:**  I GUESS THAT JUST BEGS THE QUESTION,

21  YOUR HONOR:  WHAT ISSUES NEED TO BE DEVELOPED HERE?  BECAUSE IF

22  THE COURT FINDS THERE'S NO AMBIGUITY IN THE LANGUAGE OF THE

23  EXCLUSION, YOU HAVE ALL THE UNDERLYING ALLEGATIONS BEFORE YOU.

24  YOU HAVE, STANDING IN THE SHOES OF E-PLANNING HERE BY WAY OF

25  ALLEGED ASSIGNMENT, THE VERY CLAIMANTS WHO BROUGHT THOSE

1    UNDERLYING CLAIMS.

2            SO I DON'T KNOW WHAT ADDITIONAL DISCOVERY THEY WOULD

3    NEED IN ORDER FOR YOUR HONOR TO APPLY THE EXCLUSION.

4            **THE COURT:**   OKAY.  LAST COMMENT?

5            **MR. DONALDSON:**   YEAH, LAST COMMENT.  YOU KNOW, THE

6    NOTION THAT SOMEHOW I MISCITED SOMETHING TO THE COURT FROM THE

7    COMPLAINT, I MADE THE EXACT SAME ALLEGATION WORD FOR WORD IN

8    THE STATEMENT OF CLAIM, WHICH IS EXHIBIT C.  WHAT HAPPENED IS

9    THAT BECAUSE THERE WAS AN ARBITRATION AGREEMENT, THE CLAIMS

10   WERE INITIALLY BROUGHT AGAINST THE E-PLANNING DEFENDANTS IN

11   ARBITRATION, AND WE FILED A SEPARATE CASE IN MARIN COUNTY AS TO

12   THE OTHER AREI DEFENDANTS.

13           BUT THE EXACT SAME ALLEGATION THAT I JUST READ ABOUT

14   ARMITAGE MAINTAINING A CRITICAL PAY LIST IS IN THAT DOCUMENT.

15   AND IF YOUR HONOR NEEDS THE PAGE NUMBER, I'M HAPPY TO FIND IT

16   FOR YOU.

17           **THE COURT:**   WELL, I KNOW THAT BETWEEN THE TWO OF YOU,

18   YOU WANT ME TO GO BACK AND REVIEW STARTING AT 37 -- YOU WANTED

19   37 AND 38.  YOU WANT ME TO LOOK AT 40.  I'LL READ ALL AROUND

20   THAT --

21           **MR. DONALDSON:**   ANYWAYS, IT'S AT PAGE 13 THROUGH 14

22   OF THE OTHER EXHIBIT.

23           THE LAST THING IS, THIS NOTION OF WHY DO WE NEED ANY

24   DISCOVERY ON PROFESSIONAL SERVICES?  I MEAN, THE FACT OF THE

25   MATTER IS THAT THEY DEFINED THE TERM IN ONE OF THE POLICIES.

1   SO THE NOTION THAT IT'S SORT OF UNIVERSALLY UNDERSTOOD WHAT

2   "PROFESSIONAL SERVICES" MEANS -- I'M A PROFESSIONAL.  HE'S A

3   PROFESSIONAL.  IF HE HITS ME ON THE WAY OUT WITH HIS CAR, DOES

4   THAT MEAN THE PROFESSIONAL SERVICES EXCLUSION APPLIES?  OF

5   COURSE IT DOESN'T, BECAUSE YOU HAVE TO TIE WHAT TYPE OF

6   SERVICES LED TO THE PARTICULAR INJURY, AND WERE THOSE SERVICES

7   PROFESSIONAL SERVICES OR JUST GENERAL NEGLIGENCE OR BREACH OF

8   FIDUCIARY DUTY OUTSIDE THE AMBIT OF ONE'S PROFESSIONAL

9   SERVICES.

10          THAT'S WHY I THINK THE ISSUE IS -- IS UNCLEAR ON THIS

11  RECORD IF ONE WERE TO ACCEPT THEIR VIEW OF THE LAW, WHICH IS

12  THAT YOU CAN SIMPLY TAKE THE CASES AND SAY THAT IF YOU'RE IN A

13  HIGHER CALLING, YOU'RE SUBJECT TO A PROFESSIONAL EXCLUSION.

14          **MR. NARBAITZ:**  JUST IN CONCLUDING, YOUR HONOR, AND

15  SORRY TO KEEP BEATING A DEAD HORSE, BUT IN THAT SAME FINRA

16  ARBITRATION, DOCUMENT 9-6, ON PAGE 13 OF 15 THERE'S A PARAGRAPH

17  ABOUT A THIRD OF THE WAY DOWN THAT BEGINS WITH, "IN SUM," AND

18  AGAIN IT TALKS ABOUT HOW THIS IS WHAT E-PLANNING KNEW OR SHOULD

19  HAVE KNOWN AND FAILED TO DISCLOSE, AND THAT'S THE RELATION TO

20  THE MISMANAGEMENT OF THE PROPERTIES.

21          **THE COURT:**  OKAY.

22          **MR. DONALDSON:**  JUST IN CLOSING, YOUR HONOR, I WOULD

23  LIKE TO SAY VERY BRIEFLY THIS IS A D&O POLICY.  THERE WAS A

24  SEPARATE ERRORS AND OMISSIONS POLICY THAT E-PLANNING PURCHASED

25  AS PART OF ITS INSURANCE PROGRAM.  THIS POLICY WAS MEANT TO

1   COVER THIS TYPE OF CLAIM.  THE D&O POLICY CLEARLY IS MEANT TO

2   EXCLUDE IT.

3          AND I WOULD JUST POINT OUT -- AND I DON'T MEAN TO

4   SOUND FLIPPANT AT ALL, BUT, I MEAN, IT APPEARS THAT E-PLANNING

5   WAS ALL TOO HAPPY TO ASSIGN RIGHTS UNDER THIS D&O POLICY TO THE

6   CLAIMANTS, AND THIS WAS AN ASSIGNMENT THAT WAS APPROVED BY A

7   FEDERAL BANKRUPTCY COURT, WHICH I DON'T IMAGINE WOULD TOO

8   EASILY LET SOMETHING GO IF IT WAS A POTENTIAL SOURCE OF ASSETS

9   OR PAYING CREDITORS.

10         **THE COURT:**  I DON'T THINK I CAN REALLY MAKE THAT KIND

11  OF INFERENCE.  IT WAS A NEGOTIATED ARRANGEMENT.  THE FLIP SIDE

12  OF THAT ARGUMENT IS THAT PLAINTIFFS THOUGHT THEY WERE OBTAINING

13  SOMETHING OF VALUE BY GETTING THE ASSIGNMENT OF THESE RIGHTS,

14  OR ELSE THEY WOULDN'T HAVE DONE IT.  SO I'M NOT SURE THAT YOU

15  CAN GLEAN FROM THE FACT THAT THE BANKRUPTCY COURT APPROVED IT,

16  AS THE BANKRUPTCY COURT WAS VALUING IT, IN ANY WAY, SHAPE, OR

17  FORM.  BUT, OKAY.

18         **MR. NARBAITZ:**  AND IT'S TRUE THAT PLAINTIFFS MIGHT

19  HAVE THOUGHT THEY WERE GETTING SOMETHING.  I JUST MEAN TO SAY

20  IT'S TELLING THAT E-PLANNING ITSELF NEVER PURSUED ANYTHING

21  UNDER THIS POLICY.

22         **THE COURT:**  OKAY.  I'LL TAKE THE MATTER UNDER

23  SUBMISSION.  THANK YOU VERY MUCH.

24         **MR. DONALDSON:**  THANK YOU, YOUR HONOR.

25         **MR. NARBAITZ:**  THANK YOU, YOUR HONOR.  HAVE A GOOD

1    AFTERNOON.

2              **MR. FOX:**  THANK YOU, YOUR HONOR.

3              **THE COURT:**  YOU TOO.

4              (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE
UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY
CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 11-4956 RS, ET AL.,
AMBROSIA V. CERTAIN UNDERWRITERS OF LLOYD'S, ET AL., WERE
REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE
THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;
THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID
PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID
TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL
FROM THE COURT FILE.

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

WEDNESDAY, APRIL 18, 2012