1  **SEDGWICK LLP**
   RALPH A. GUIRGIS (State Bar. No. 143262)
2  ralph.guirgis@sedgwicklaw.com
   MICHAEL L. FOX (State Bar No. 173355)
3  michael.fox@sedgwicklaw.com
   JAMISON R. NARBAITZ (State Bar No. 219339)
4  jamison.narbaitz@sedgwicklaw.com
   333 Bush Street, 30th Floor
5  San Francisco, CA  94104-2834
   Telephone:    415.781.7900
6  Facsimile:    415.781.2635

7  Attorneys for Defendant
   BRIT UW LIMITED
8  (sued as "Certain Underwriters at Lloyd's
   Under Policy No. B0146LDUSA0701030")

9

10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13

14  WILLIAM AMBROSIO, *et al.*,            CASE NO.   3:11-cv-04956-RS

15              Plaintiffs,               **DEFENDANT BRIT UW LIMITED'S**
                                          **NOTICE OF MOTION AND MOTION**
16       v.                               **TO DISMISS PLAINTIFFS' SIX**
                                          **RELATED FIRST AMENDED**
17  CERTAIN UNDERWRITERS AT LLOYD'S       **COMPLAINTS FOR FAILURE TO**
    UNDER POLICY NO.                      **STATE A CLAIM**
18  B0146LDUSA0701030 and DOES 1 through  **[FED.R.CIV.P. 12(b)(6)]**
    100, inclusive,
19                                        Judge:  Hon. Richard Seeborg
                Defendants.               Courtroom:  3, 17th Floor
20                                        Date: June 28, 2012
                                          Time:  1:30 p.m.
21

22

23

24

25

26

27

28

SF/2727894v1

| | |
|---|---|
| WILLIAM JAMISON, *et al.*, | CASE NO.   3:11-cv-04958-RS |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S UNDER POLICY NO. B0146LDUSA0701030 and DOES 1-100, inclusive, | |
| Defendants. | |
| HENRY JAMES ANDERSON, *et al.* | CASE NO.  3:11-cv-5760-RS |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S UNDER POLICY NO. B0146LDUSA0701030 and DOES 1 through 100, inclusive, | |
| Defendants. | |
| ROSEVILLE CAPITAL RESOURCES, LLC; *et al.*, | CASE NO.  3:11-cv-5761-RS |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S UNDER POLICY NO. B0146LDUSA0701030 and DOES 1 through 100, inclusive, | |
| Defendants. | |
| DEAN G. NOWACKI; *et al.*, | CASE NO.  3:11-cv-6366-RS |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S UNDER POLICY NO. B0146LDUSA0701030 and DOES 1 through 100, inclusive, | |
| Defendants. | |

SF/2727894v1

| | |
|---|---|
| 1 | OAKDALE HEIGHTS REDDING 1, LLC; *et al.*, |
| 2 | |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | CERTAIN UNDERWRITERS AT LLOYD'S UNDER POLICY NO. |
| 6 | B0146LDUSA0701030 and DOES 1 through 100, inclusive, |
| 7 | |
| | Defendants. |

CASE NO.  3:11-cv-6368-RS

SF/2727894v1

Sedgwick LLP

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  RELEVANT FACTS ............................................................................................... 1

    A.   Procedural History ........................................................................................ 1

    B.   Plaintiffs' Efforts to Amend Their Complaints ...................................... 2

    C.   The D&O Policy ........................................................................................... 4

III. ARGUMENT ........................................................................................................... 5

    A.   Standard for Motion to Dismiss ................................................................. 5

    B.   Plaintiffs' First Amended Complaints Do Not Allege Facts Supporting
        Underlying Claims that Fall Outside the Scope of the Partial
        Professional Services Exclusion ................................................................. 5

        1.   The *Ambrosio* First Amended Complaint .................................. 6

        2.   The *Jamison* First Amended Complaint ..................................... 8

        3.   The *Anderson*, *Roseville Capital*, *Nowacki* and *Oakdale
             Heights* First Amended Complaints ............................................ 9

    C.   Plaintiffs Mischaracterize the Allegations of the Underlying Claims .................. 12

    D.   Plaintiffs' Mischaracterizations of the Underlying Claims Take the
        Allegations Outside of the D&O Policy's Coverage Grants ................................ 14

    E.   Absent Coverage, All of Plaintiffs' Causes of Action Fail as a Matter
        of Law ............................................................................................................. 15

    F.   The Court Should Disregard Plaintiffs' Belated and Improper Attempt
        to Seek Reconsideration of the Order on the Original Motions to
        Compel ........................................................................................................... 16

IV.  CONCLUSION ....................................................................................................... 17

SF/2727894v1

-i-

DEFENDANT BRIT UW LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SIX RELATED FIRST AMENDED COMPLAINTS FOR FAILURE TO STATE A CLAIM [FED.R.CIV.P. 12(b)(6)]
3:11-cv-04956-RS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*
  556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................ 5, 9

*Bell Atlantic Corporation v. Twombly*
  550 U.S. 554, 127 S. Ct. 1955 (2007)................................................................ 5, 9

*Branch v. Tunnell*
  14 F.3d 449 (9th Cir. 1994) ................................................................................ 4

*Food Pro International, Inc. v. Farmers Insurance Exchange*
  169 Cal.App.4th 976 (2008) ............................................................................... 6

*Gregg & Valby, LLP v. Great American Ins. Co.*
  316 F.Supp.2d 505 (S.D.Tex., Jan. 8, 2004) (Lake, J.) ..................................... 11

*Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*
  896 F.2d 1542 (9th Cir. 1990) ............................................................................ 4

*MDL Capital Management, Inc. v. Federal Insurance Co.*
  274 F.App'x 169 (3rd Cir. 2008) ....................................................................... 8

*Medical Records Assoc., Inc. v. American Empire Surplus Lines Ins. Co.*
  142 F.3d 512 (1st Cir. 1998) ............................................................................ 11

*Papasan v. Allain*
  478 U.S. 265, 106 S.Ct. 2932 (1986) ................................................................. 9

*Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*
  967 F.Supp. 1148 (D.Minn., Jun 18, 1997) (Tunheim, J.)............................. 8, 12

*Reinhardt v. Certain Underwriters at Lloyd's, London*
  2007 WL 900731 (Minn.App., March 27, 2007)............................................... 8

*Shoyer v. New Cingular Wireless Services, Inc.*
  622 F.3d 1035 (9th Cir. 2010) ............................................................................ 5

*Stone v. Hartford Casualty Company*
  470 F.Supp.2d 1088 (C.D.Cal., Nov. 13, 2006) (Pregerson, J.) ...................... 12

*Waller v. Truck Ins. Exchange, Inc.*
  11 Cal.4th 1 (1995) ........................................................................................... 16

*Young v. Illinois Union Ins. Co.*
  366 F. App'x 777 (9th Cir. 2010) ....................................................................... 6

## Statutes

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................. 16

**DEFENDANT BRIT UW LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SIX RELATED FIRST AMENDED COMPLAINTS FOR FAILURE TO STATE A CLAIM [FED.R.CIV.P. 12(b)(6)]**
3:11-cv-04956-RS

*Sedgwick* LLP

Cal. Ins. Code § 11580(b)(2) .......................................................... 16

Fed.R.Civ.P. 12(b)(6)........................................................................ 5

## Other Authorities

C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004) ..................... 9

TO THE COURT AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 28, 2012, at 1:30 p.m., in Courtroom 3 on the 17th Floor of the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg, defendant Brit UW Limited (originally sued as "Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030") ("Brit") will move to have this Court dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the six separate but related first amended complaints filed by Plaintiffs William Ambrosio, *et al.* (ECF No. 45 in Case No. 3:11-cv-04956-RS); William Jamison, *et al.* (ECF No. 46 in Case No. 3:11-cv-04958-RS); Henry James Anderson, *et al.* (ECF No. 36 in Case No. 3:11-cv-5760-RS); Roseville Capital Resources, LLC, *et al.* (ECF No. 32 in Case No. 3:11-cv-5761-RS); Dean G. Nowacki, *et al.* (ECF No. 22 in Case No. 3:11-cv-6366-RS); and Oakdale Heights Redding 1, LLC, *et al.* (ECF No. 26 in Case No. 3:11-cv-6368-RS) (collectively "Plaintiffs"), all of which have been removed to this Court and related before the Hon. Richard Seeborg.

Brit seeks an order from this Court dismissing Plaintiffs' various and respective causes of action for breach of contract; breach of the covenant of good faith and fair dealing; bad faith; declaratory relief; unfair business practices (Cal. Business & Professions Code § 17200 *et seq.*); and/or direct judgment creditor action (Cal. Insurance Code § 11580(b)(2)), because Plaintiffs fail to state any claim upon which relief can be granted.  The six related actions seek coverage for underlying claims that Plaintiffs brought against Brit's insureds and/or purported insureds.  All of the causes of action asserted by Plaintiffs depend upon the existence of coverage for the underlying claims under the Directors, Officers and Company Liability Policy No. B0146LDUSA0701030 ("D&O Policy") issued by Brit.  Because coverage for the underlying claims is precluded by the Partial Professional Services Exclusion in the D&O Policy, because Plaintiff's mischaracterize the allegations in the underlying pleadings in their first amended complaints, and because Plaintiff's mischaracterizations remove the underlying allegations from the insuring grants of the D&O Policy, all of Plaintiffs' causes of action fail as a matter of law.

1    Brit's Motion to Dismiss is based upon this Notice of Motion and Motion, the attached

2  Memorandum of Points and Authorities, all pleadings on file with this Court, the arguments of

3  counsel at any hearing, and any other matter the Court may properly consider.

4

5  DATED:  May 16, 2012                          SEDGWICK LLP

6

7                                               By: */s/ Michael L. Fox*
                                                    Michael L. Fox
8                                                   Jamison R. Narbaitz
                                                    Attorneys for Defendant
9                                                   BRIT UW LIMITED
                                                    (sued as "Certain Underwriters at Lloyd's
10                                                  Under Policy No. B0146LDUSA0701030")

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Brit brings this consolidated motion to dismiss in response to the first amended complaints filed in six separate coverage actions related before the Hon. Richard Seeborg.  This Court previously ruled that the underlying claims as alleged in the original coverage complaints in these related actions fall within the purview of the "Partial Professional Services Exclusion" in the D&O Policy and are not covered, and therefore that the causes of action purportedly assigned to Plaintiffs and now brought against defendant Brit failed to state a claim upon which relief can be granted.

Plaintiffs have now amended their coverage complaints in an attempt to allege additional conduct purportedly alleged in the underlying claims that falls outside the purview of the exclusion.  However, the amendments add nothing new to further Plaintiffs' cause.  Because the exclusion broadly applies even to the "new" conduct alleged in the amended complaints – assuming that Plaintiffs' characterization of the underlying pleadings is correct – since it all arises from the deficient professional services rendered by Brit's insured, Plaintiffs fail to state a claim and this motion to dismiss must be granted.

**II.      RELEVANT FACTS**

**A.      Procedural History**

Eight separate insurance coverage actions were filed against Brit in Marin County Superior Court in or around September 2011.  Brit removed the eight actions to this Court between October 2011 and December 2011 and related them before Judge Seeborg.  (ECF No. 1 in each of the six related actions; *see also* ECF No. 28 in Case No. 3:11-cv-04956-RS.)

Brit thereafter filed motions to dismiss each of the eight related actions.  Essentially, Brit asserted that no coverage is available under the D&O Policy because the Partial Professional Services Exclusion precludes coverage for the deficient financial advisory and securities brokerage services alleged in the underlying claims against Brit's insureds and/or purported insureds.  The eight motions to dismiss were heard on February 2, 2012.  (ECF No. 40 in Case No. 3:11-cv-04956-RS.)

Sedgwick LLP

1    On March 29, 2012, the Court granted all eight motions to dismiss but held that

2  "plaintiffs may, if they elect and have a good faith [basis] for doing so, amend the pleadings to

3  allege facts supporting claims that do not fall under the Partial Professional Services Exclusion."

4  (ECF No. 41 in Case No. 3:11-cv-04956-RS ("3/29/12 Order"), at pg. 14:9-10.)

5    On May 2, 2012, first amended complaints were filed in six of the eight related actions:

6  (1) the *Ambrosio* action (ECF No. 45 in Case No. 3:11-cv-04956-RS); (2) the *Jamison* action

7  (ECF No. 46 in Case No. 3:11-cv-04958-RS); (3) the *Anderson* action (ECF No. 36 in Case No.

8  3:11-cv-5760-RS); (4) the *Roseville Capital Resources, LLC* action (ECF No. 32 in Case No.

9  3:11-cv-5761-RS); (5) the *Nowacki* action (ECF No. 22 in Case No. 3:11-cv-6366-RS); and (6)

10  the *Oakdale Heights Redding 1, LLC* action (ECF No. 26 in Case No. 3:11-cv-6368-RS).[1]

11  **B.    Plaintiffs' Efforts to Amend Their Complaints**

12    Plaintiffs initiated the claims giving rise to the six related coverage actions when they

13  filed civil actions and/or Financial Industry Regulatory Authority ("FINRA") arbitrations against

14  ePlanning and its agents and representatives, alleging deficient professional services – including

15  alleged breaches of fiduciary duties and misrepresentations – in connection with the sale of

16  securities (collectively the "Underlying Claims").  (*See, e.g.*, 3/29/12 Order, at pg. 2:12-15.)

17  Plaintiffs and ePlanning thereafter entered into stipulated judgments in the Underlying Claims,

18  and ePlanning and its representative Jeffery Guidi assigned their coverage rights against Brit to

19  Plaintiffs in exchange for Plaintiff's covenant not to execute on the judgment against them.  (*See,*

20  *e.g.*, ECF No. 45 in Case No. 3:11-cv-04956-RS, at ¶ 34.)

21    Plaintiffs then filed their original coverage actions against Brit; Brit removed and related

22  the actions before this Court; and Brit filed motions to dismiss, as discussed above.  In opposing

23  Brit's motions to dismiss the eight original complaints, Plaintiffs asserted *inter alia*[2] that, even if

---

24  [1]    The plaintiffs in two of the actions – *Alvarado* (Case No. 3:11-cv-4957-RS) and *Wood*
25  *River Capital* (Case No. 3:11-cv-5759-RS) – did not file first amended complaints.

26  [2]    In opposing the motions to dismiss the original complaints, Plaintiffs also asserted that
   the Partial Professional Services Exclusion is ambiguous; that the exclusion is not
27  conspicuous, plain, and clear; and that Brit's proffered interpretation of the exclusion
   would render the policy illusory.  The Court rejected each of these arguments.  (*See*
28  Section III.F. *infra*.)

the Court interpreted the exclusion as applying to the sales of securities to third parties, the eight

related actions must nonetheless survive because the underlying claims also alleged conduct that

falls outside the Partial Professional Services Exclusion – including allegations that ePlanning

mismanaged investments and misused investors' funds.  (*See* 3/29/12 Order at pg. 5:15-19.)

In its Order dated March 29, 2012, the Court rejected the argument that such alleged

conduct would fall outside the broad scope of the exclusion since the conduct was *connected to*

the sale of securities:

> While it is true that the alleged acts [*i.e.*, allegedly mismanaging the real estate
> projects underlying the securities sold to plaintiffs and allegedly misusing
> investors' funds after the securities were sold to them] cannot be literally equated
> with the sale of securities or financial advising, the proper question under the
> Partial Professional Services Exclusion clause is whether ePlanning's misconduct
> occurred "in connection with the performance of any professional services."  This
> standard sweeps more broadly than plaintiffs are willing to acknowledge, and their
> suggestion that ePlanning's alleged misconduct is entirely unrelated, in the end, is
> simply not tenable.
>
> A securities broker-dealer or financial advisor who receives a client's funds for
> the purpose of investment, and then commingles those funds, or mismanages the
> assets he or she recommends and subsequently acquires on the client's behalf,
> commits wrongs "in connection with the performance of professional services."
> To say, as plaintiffs do, that the commingling of funds constituted an independent
> breach of ePlanning's fiduciary duties does not remove the allegation from the
> ambit of professional services.  After all, the alleged fiduciary duty arises from the
> trust reposed in the advisor as the custodian of client funds.  Likewise, to the
> extent ePlanning was involved in the undisclosed encumbrance of the real estate
> underlying the assets it sold to plaintiffs, those activities, even if they constitute
> unfair business practices, relate directly to ePlanning's performance as financial
> advisor.  Contrary to plaintiffs' suggestions, these are not activities that are purely
> incidental to ePlanning's role as a financial advisor or broker-dealer, or merely
> routine administrative matters requiring no special expertise.  Ultimately, it is the
> nature of the conduct, not the source of law, that governs whether the exclusion
> applies….

(3/29/12 Order, at pg. 13:9-27.)  As discussed above, the Court granted Plaintiffs leave to amend

the pleadings if they had a good faith basis for alleging facts supporting claims that do not fall

within the Partial Professional Services Exclusion.  (3/29/12 Order, at pg. 14:9-10.)

Plaintiffs thereafter filed the six first amended complaints at issue here.  Each of the six

first amended complaints contains virtually identical allegations as the original complaints

concerning the underlying claims and their allegations of the performance of deficient

professional services in connection with the sale of securities.  However, the six first amended

Sedgwick LLP

1   complaints attempt to identify other acts or omissions alleged in the underlying claims that

2   purportedly fall outside the scope of the Partial Professional Services Exclusion, as discussed in

3   detail below.  Despite their best efforts, Plaintiffs fail to state claims for coverage under the D&O

4   Policy, since all of the alleged conduct involves either professional services or conduct "in

5   connection with" professional services.  (*See* Section III.B. *infra*.)

6   **C.      The D&O Policy**

7           As discussed in Brit's original motions to dismiss, the D&O Policy contains the following

8   insuring clauses:

9           I.  Insuring Clauses

10              A.  Underwriters shall pay on the behalf of the Directors and Officers Loss
                    resulting from any Claim first made against the Directors and Officers

11                  during the Policy Period for an Individual Act.

12              B.  Underwriters shall pay on behalf of the Company Loss which the
                    Company is required or permitted to pay as indemnification as to any

13                  of the Directors and Officers resulting from any Claim first made
                    against the Directors and Officers during the Policy Period for an

14                  Individual Act.

15              C.  Underwriters shall pay on behalf of the Company Loss resulting from
                    any Claim first made against the Policy during the Policy Period for a

16                  Corporate Act.

17  (ECF No. 45-1 in Case No. 3:11-cv-04956-RS ("D&O Policy"), at pg. 10 of 51.)[3]

18          Under Section II, subdivision E, a "Corporate Act" is defined as "any actual or alleged

19  act, error, omission, misstatement, misleading statement, neglect or breach of duty by the

20  Company involving a Securities Law Violation."  (D&O Policy, pg. 11 of 51.)  "Individual Act"

21  is defined by endorsement as "any actual or alleged act, error, omission, misstatement,

22  misleading statement, neglect or breach of duty by any of the Directors and Officers, while acting

23  ───────────────────

24  [3]      The D&O Policy is attached as an exhibit to the *Ambrosio*, *Jamison*, and *Anderson* first
         amended complaints, and therefore may be considered by the Court in ruling on this

25       Fed.R.Civ.P. 12(b)(6) motion.  *See Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*,
         896 F.2d 1542, 1555 (9th Cir. 1990).  The D&O Policy is not attached to the *Roseville*

26       *Capital*, *Nowacki*, or *Oakdale Heights* first amended complaints, but its contents are
         alleged in those pleadings and therefore may be considered by the Court in ruling on this

27       motion.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  In any event, the Court
         has already ruled that the D&O Policy is properly before the Court.  (ECF No. 41 in Case

28       No. 3:11-cv-04956-RS at p. 3 fn. 3.)

Sedgwick LLP

1   in their capacity as … [¶] … a director or officer of the Company" or as "an employee of the

2   Company but only if the Claim is for an Employment Practice Violation or a Securities Law

3   Violation or if such employee is named as a co-defendant with a director or officer of the

4   Company."  (*Id.*, at pg. 23 of 51.)

5          The D&O Policy excludes coverage for losses related to professional services to

6   customers (like Plaintiffs here) pursuant to a "Partial Professional Services Exclusion" which

7   states that "Underwriters shall not be liable to make any payment in connection with any Claim

8   … for any act error or omission in connection with the performance of any professional services

9   by or on behalf of the Company for the benefit of any other entity or person."  (*Id.*, at pp. 13, 14,

10  and 23 of 51.)  The policy also specifies that any dispute concerning interpretation of the policy

11  and its terms will be governed by the laws of the State of California.  (*Id.*, at pg. 25 of 51.)

12                          **III.   ARGUMENT**

13  **A.   Standard for Motion to Dismiss**

14         The absence of sufficient facts under a legal theory subjects a complaint to dismissal

15  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Shoyer v. New Cingular Wireless*

16  *Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  The sufficiency of facts alleged must state a

17  claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

18  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19  statements, do not suffice."  *Id.* (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555,

20  127 S. Ct. 1955 (2007)).  Where a complaint pleads facts that are consistent with liability but

21  permit the Court to infer no more than the mere *possibility* of misconduct supporting liability, it

22  "'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id.

23  **B.   Plaintiffs' First Amended Complaints Do Not Allege Facts Supporting Underlying**

24        **Claims that Fall Outside the Scope of the Partial Professional Services Exclusion**

25         Plaintiffs attempt in their first amended complaints to describe conduct that was

26  purportedly alleged in the Underlying Claims that falls outside the scope of the Partial

27  Professional Services Exclusion.  Plaintiffs fail in this endeavor.  This Court has already

28  recognized the broad application of the Partial Professional Services Exclusion and has ruled that

Sedgwick LLP

the exclusion broadly applies to misconduct that occurred "in connection with the performance of professional services." (3/29/12 Order, at pg. 13:9-14.) *See also Young v. Illinois Union Ins. Co.*, 366 F.App'x 777, 778 (9th Cir. 2010) (unpublished) ("California courts, and [the Ninth Circuit] applying California law, have interpreted [professional service exclusions] broadly.").

*Food Pro International, Inc. v. Farmers Insurance Exchange*, 169 Cal.App.4th 976 (2008), which Plaintiffs previously cited in their joint opposition to the original motions to dismiss, does not further Plaintiffs' cause. In *Food Pro*, coverage for the worker's injury was not barred by the professional services exclusion because the injury had nothing whatsoever to do with the consulting services that the insured engineering firm was providing on the construction site; rather, the events that lead to the worker's injury involved acts of general negligence. *See id* at 991. As this Court recognized, the *Food Pro* court held that "the correct question is whether the injury 'arose from the performance of a professional service, not merely at the same time the insured was otherwise providing professional services to a third party.'" (3/29/12 Order, at pg. 12:2-5, citing *Food Pro, supra*, 169 Cal.App.4th at 991.)

Here, all of the conduct purportedly alleged in the Underlying Claims, and discussed in the first amended complaints, arose from ePlanning's services to Plaintiffs as financial advisors and securities brokers. Plaintiffs are hard-pressed to claim otherwise. In fact, the injury suffered is all the same – the loss of Plaintiffs' investments – and it resulted from Plaintiffs' seeking professional services from ePlanning.

### 1.     The *Ambrosio* First Amended Complaint

The first amended complaint in the *Ambrosio* action contains a section entitled "ePlanning's Involvement in Post-Offering Management" that attempts to allege conduct that falls outside the ambit of the Partial Professional Services Exclusion. The section alleges that ePlanning and its representatives mismanaged the investments sold to Plaintiffs as follows:

- Although ePlanning and its agents were actively involved in the offer and sale of real estate securities to Plaintiffs, ePlanning consistently represented that it and its agents would not be involved in the management of the investments.

Sedgwick LLP

- Notwithstanding these representations, the underlying claims expressly allege that ePlanning and its representatives engaged in errors, omissions and other misconduct that not only caused or contributed to the demise of the investments but also were unrelated to their professional services as sellers of securities.

- Specifically, the underlying claims alleged that ePlanning:  (1) burdened the investment properties with an unauthorized second loan that created an insurmountable debt load; (2) failed to address licensing issues and take other measures to maintain the occupancy levels at the investment properties in a manner that would allow the properties to operate profitably and meet loan covenants; and (3) diverted capital from the investments.

(*Ambrosio* FAC [ECF No. 45 in Case No. 3:11-cv-04956-RS], at ¶¶ 15-24.)

It is difficult to see how the alleged mismanagement and misrepresentations could have no connection to ePlanning's performance of professional services as the securities broker who sold the investments to Plaintiffs.  If ePlanning had not sold the investments to Plaintiffs, it would have had no opportunity to represent that it would not be involved in the management of those investments, and then could not have proceeded to mismanage those investments despite such alleged representations.

As this Court has already recognized:  "A securities broker-dealer or financial advisor who receives a client's funds for the purpose of investment, and then commingles those funds, *or mismanages the assets he or she recommends and subsequently acquires on the client's behalf*, commits wrongs 'in connection with the performance of professional services.'"  (3/29/12 Order, at pg. 13:15-18.)  Moreover, other courts have already recognized that "managing the assets and investments of investors" … "clearly involve professional services."  *See Reinhardt v. Certain Underwriters at Lloyd's, London*, 2007 WL 900731, at *5 (Minn.App., March 27, 2007), citing *Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 967 F.Supp. 1148, 1156 (D.Minn., Jun 18, 1997) (Tunheim, J.).

Similar to the present matter, in *MDL Capital Management, Inc. v. Federal Insurance Co.*, 274 F.App'x 169 (3rd Cir. 2008) (unpublished), the insureds argued that the professional

Sedgwick LLP

1    services exclusion in their directors and officers liability policy did not apply because the

2    complaint against them implicated their conduct as directors for their failure to *properly oversee*

3    an investment product that allegedly caused the claimant's loss, and that this role did not involve

4    "professional services." *See id.* at 170, 172.  The Third Circuit rejected this argument, holding

5    that the claim was barred by the professional services exclusion because the allegations stemmed

6    from the insured entity's failure as an investment advisor/manager. *See id.* at 173-174.

7        Moreover, the *Ambrosio* first amended complaint alleges that ePlanning specifically

8    mismanaged the investments by, *inter alia*, burdening the investment properties with an

9    unauthorized second loan.  (*Ambrosio* FAC [ECF No. 45 in Case No. 3:11-cv-04956-RS], at ¶

10   17.)  *Plaintiffs made this very same assertion in opposition to Brit's original motions to dismiss*

11   *and the Court squarely rejected it:*  "[T]o the extent ePlanning was involved in the undisclosed

12   encumbrance of the real estate underlying the assets it sold to plaintiffs, those activities, even if

13   they constitute unfair business practices, relate directly to ePlanning's performance as a financial

14   advisor." (3/29/12 Order, at pg. 13:21-24.)

15               **2.**     **The *Jamison* First Amended Complaint**

16        The first amended complaint in the *Jamison* action vaguely alleges the following conduct

17   by ePlanning and its agents and representatives that purportedly falls outside the scope of the

18   Partial Professional Services Exclusion:

19       •    The formation and ongoing operation of a Ponzi scheme using Plaintiffs' funds.

20       •    ePlanning and its representatives' failure to disclose the ongoing fraudulent conduct

21            and conversion of the Plaintiffs' money.

22       •    Acts by ePlanning Securities' directors and officers giving rise to control person

23            liability and liability for material assistance under the California Corporations Code.

24       •    The failure to ensure ePlanning's legal compliance and maintenance of accurate and

25            lawful books and records.

26       •    The operation of the various ePlanning entities in a manner that allowed, if not

27            supported, the creation and maintenance of an alleged Ponzi scheme.

28   (*Jamison* FAC [ECF No. 46 in Case No. 3:11-cv-04958-RS], at ¶ 29.)

*Sedgwick* LLP

Plaintiffs provide no elaboration on these conclusory allegations.  As the United States Supreme Court has held, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  [Citation omitted.]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955 (2007).

Moreover, the Supreme Court has observed that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, supra*, 550 U.S. at 555, citing C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–236 (3d ed. 2004).  "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly, supra*, 550 U.S. at 555, citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932 (1986).

The allegations of the *Jamison* first amended complaint – including that the Underlying Claims alleged that ePlanning's operations facilitated a Ponzi scheme, failed to disclose fraudulent conduct, and committed acts that gave rise to control person liability – do not provide sufficient factual details.  Regardless, all of this conduct purportedly alleged in the Underlying Claims directly relates to and is connected to the provision of financial advisory and securities brokerage services, and therefore is barred by the Partial Professional Services Exclusion.

### 3.    The *Anderson, Roseville Capital, Nowacki* and *Oakdale Heights* First Amended Complaints

The first amended complaints in the *Anderson*, *Roseville Capital*, *Nowacki* and *Oakdale Heights* actions contain virtually identical allegations concerning conduct that purports to be "separate and apart from" ePlanning's alleged failure to provide competent investment services (and therefore falls outside the Partial Professional Services Exclusion) as follows:

Sedgwick LLP

- The underlying defendants (including ePlanning and its agents and representatives) perpetrated a Ponzi scheme by virtue of their failure to establish, maintain and monitor reasonable internal, administrative and operational procedures, thereby fostering a business environment for the creation and development of the Ponzi scheme by the inadequate and improper maintenance and review of ePlanning's internal books and records, and their failure to adequately and properly administer ePlanning and its business operations.  This allowed the Ponzi scheme to perpetuate even after and apart from the sale of the securities.  These internal, non-professional administrative practices were of an ordinary business nature which solely benefitted the underlying defendants and did not arise from and were not connected with the provision of professional services for the benefit of third parties.

- ePlanning, as part of its internal business, administrative and operational activities, was required to regularly review its files to ensure that they were in order.  These audits did not require professional expertise, but only a person of normal intelligence.  Among the tasks were reviews to ensure that only approved products and investments were being sold to the public, and that employees were disclosing the sale of unauthorized investments, and the remittance of all monies earned by the registered representatives and monies allegedly on account with ePlanning or established by its representatives.  Notwithstanding said duties, ePlanning failed to supervise or audit its registered representatives and therefore negligently failed to discover that these representatives were soliciting and selling unauthorized and highly risky or fraudulent investments to ePlanning's clients or otherwise were diverting funds entrusted to them for other uses, including their own benefit.

- Records of the improper investments and improper use of funds by ePlanning's representatives could have been readily discovered if they had simply been reviewed by a person of ordinary intelligence.

SF/2727894v1

-10-

DEFENDANT BRIT UW LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SIX RELATED FIRST AMENDED COMPLAINTS FOR FAILURE TO STATE A CLAIM [FED.R.CIV.P. 12(b)(6)]
3:11-cv-04956-RS

1   (*Anderson* FAC [ECF No. 34 in Case No. 3:11-cv-05760-RS], at ¶¶ 97-99; *Roseville Capital*

2   FAC [ECF No. 32 in Case No. 3:11-cv-05761-RS], at ¶¶ 50-51; *Nowacki* FAC [ECF No. 22 in

3   Case No. 3:11-cv-06366-RS], at ¶¶ 21-22; and *Oakdale Heights* FAC [ECF No. 26 in Case No.

4   3:11-cv-06368-RS], at ¶¶ 21-22.)

5           It is absurd for Plaintiffs to suggest that this alleged conduct has no connection to

6   ePlanning's performance of professional services to Plaintiffs as financial advisors and securities

7   brokers. Plaintiffs attempt to characterize the alleged conduct as internal, non-professional

8   administrative practices of an ordinary business nature. This Court previously recognized cases

9   from other jurisdictions holding that routine administrative practices that do not engage

10  specialized knowledge and skill – such as billing and fee-setting activities – do not fall within the

11  meaning of the term "professional services." *See* 3/29/12 Order at pg. 12:23-13:2, citing *Medical*

12  *Records Assoc., Inc. v. American Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 515-516 (1st Cir.

13  1998); *Gregg & Valby, LLP v. Great American Ins. Co.*, 316 F.Supp.2d 505, 513-515 (S.D.Tex.,

14  Jan. 8, 2004) (Lake, J.). Despite Plaintiffs' characterizations to the contrary, the allegations go

15  far beyond routine administrative practices, and allege that the purported conduct – including the

16  failure to *establish*, *maintain* and *monitor* reasonable, internal, administrative and operational

17  *procedures* – directly resulted in the loss of the investments purchased from ePlanning.

18          Plaintiffs cannot seriously suggest that establishing, maintaining and monitoring internal

19  and operational procedures – and the failure to do so which allegedly resulted in the loss of

20  Plaintiffs' investments – is not connected to the professional services provided as financial

21  advisors and securities brokers. Courts have found that similar conduct by an investment firm –

22  specifically involving deficient procedures – is covered by a professional services exclusion:

23          [Piper] argues that the complaints simply do not arise out of "professional
            services" at all, but rather involve unexcluded "business activities." Piper bases

24          this on the fact that the underlying complaints also charge Piper with *deficient*
            *accounting procedures* and inadequate or false reporting. These activities, Piper

25          maintains, are "business activities," not professional services. *This argument is*
            *unconvincing.* While the underlying complaints are scattered with such

26          references, *the claims asserted unmistakably arise from the provision of*
            *investment services.*

27

28  *Piper Jaffray, supra*, 967 F.Supp. at 1156 (emphasis added).

Sedgwick LLP

1  Moreover, at least one District Court has found that underlying claimants who attempt to

2  recover on a stipulated judgment from an insurer by assignment cannot circumvent the

3  application of a professional services exclusion simply by describing the services rendered as

4  non-professional in nature. *See Stone v. Hartford Casualty Company*, 470 F.Supp.2d 1088, 1098

5  (C.D.Cal., Nov. 13, 2006) (Pregerson, J.) ("The mere allegation that [the insured's] services were

6  'non-professional' did not obligate Hartford to defend [the insured].").

7  In any event, it is difficult to see how ePlanning's financial advisory services and sales of

8  securities could not be connected to the purported failure to ensure that only approved products

9  and investments were being sold to the public; that its employees were disclosing the sale of

10  unauthorized investments; and that all monies earned by sales were properly remitted – especially

11  when this purported conduct allegedly led to the loss of the investments following their purchase.

12  **C.     Plaintiffs Mischaracterize the Allegations of the Underlying Claims**

13  Even though the Partial Professional Services Exclusion precludes coverage for all the

14  Underlying Claims as alleged in the first amended complaints, another reason bodes in favor of

15  dismissal:  To support their assertions that the Underlying Claims alleged conduct that falls

16  outside the scope of the exclusion, Plaintiffs mischaracterize the actual allegations of the

17  Underlying Claims.  It is no surprise that, in making these allegations in their first amended

18  complaints, Plaintiffs do not cite to specific portions of the pleadings in the Underlying Claims.

19  For example, the *Ambrosio* first amended complaint alleges that the underlying FINRA

20  statement of claim and underlying complaint "expressly allege" that ePlanning and its

21  representatives (including Armitage and Guidi) burdened the investment properties with an

22  unauthorized second loan, failed to address licensing issues, and diverted capital from the

23  investments.  (*Ambrosio* FAC [ECF No. 45 in Case No. 3:11-cv-04956-RS], at ¶ 17.)  This

24  allegation simply is not true, as the Underlying Claim does not allege such conduct against

25  ePlanning and its representatives – at least not in their capacity as representatives of ePlanning.

26  The underlying FINRA statement of claim, which was brought against, *inter alia*,

27  ePlanning, Armitage, and Guidi, alleges only that ePlanning *failed to disclose* to the investors the

28  purported mismanagement issues that led to the downfall of the investments sold by ePlanning –

Sedgwick LLP

1   not that ePlanning participated in the actual mismanagement. For example, the underlying

2   FINRA statement of claim alleges that "ePlanning and other ePlanning representatives were

3   intimately familiar with the fundamentals of the Newhall investment, and by virtue thereof

4   actually knew, or were reckless or negligent in not knowing and disclosing to Claimants that the

5   Newhall Investment was doomed to fail … Respondents knew or should have known that the

6   Newhall investment was a plainly unsuitable one for Claimants (some of whom were in their *late*

7   *80s* when the investment was recommended to them by ePlanning)." (ECF No. 9-6 in Case No.

8   3:11-cv-04956-RS, at pg. 16 of 18 (emphasis in original).)

9       The underlying *Ambosio* complaint, on the other hand, alleges that the investments were

10  mismanaged – *but ePlanning, Armitage, and Guidi were not named as defendants in that*

11  *complaint*. Rather, that action was brought against, *inter alia*, AREI (the entity that owned and

12  managed the investment properties) and its representatives. (ECF No. 9-7 in Case No. 3:11-cv-

13  04956-RS, at ¶ 10.) That complaint alleges, among other things, that: (1) AREI and its affiliates

14  simply foisted the Meecorp loan [*i.e.*, the unauthorized second loan] on the Newhall investors";

15  and (2) "AREI and Newhall could not generate revenue sufficient to run the Properties" and

16  "were unable even to timely pay property taxes owed on the Properties" because of their

17  underperformance. (*Id.* at ¶¶ 31-32 and 34.) These allegations of mismanagement were not

18  brought against ePlanning. To the extent this alleged conduct by AREI and Newhall was

19  purportedly committed by individuals like Armitage or Guidi (who, as noted, were not named as

20  defendants in the underlying complaint), it certainly was not committed in those individuals'

21  capacities as directors and officers or employees of ePlanning, and therefore would not fall

22  within the insuring grant of the D&O Policy. (*See* D&O Policy, at pp. 10 and 23 of 51.)

23      However, the underlying *Ambrosio* complaint proceeds to allege that "Defendants and the

24  FINRA Respondents [defined to include ePlanning and its representatives] failed to disclose any

25  of the above matters notwithstanding" the assurance given in the Private Placement

26  Memorandum (PPM) – *i.e.*, the promotional material issued in connection with the sales of the

27  investments in the properties. (ECF No. 9-7 in Case No. 3:11-cv-04956-RS, at ¶¶ 21, 37.)

28  Hence, the alleged conduct with respect to ePlanning and its representatives concerned the failure

Sedgwick LLP

1   to *make disclosures* in connection with the sale of the invesetment securities – conduct directly

2   connected to the company's professional services as investment advisors and securities brokers,

3   and therefore barred from coverage by the Partial Professional Services Exclusion.

4          The same is true concerning the characterization by the other five first amended

5   complaints of the allegations of the Underlying Claims.  The purported allegations in the

6   Underlying Claims, as alleged in the first amended complaints in this action, are either severely

7   mischaracterized or completely non-existent.  As with the *Ambrosio* FINRA statement of claim

8   and underlying complaint, the pertinent pleadings in the other five Underlying Claims were

9   submitted for judicial notice in connection with Brit's original motions to dismiss.  (*See* ECF No.

10  9-7 in Case No. 3:11-cv-04958-RS [first amended complaint in Underlying Claim to *Jamison*

11  action]; ECF No. 11-4 in Case No. 3:11-cv-05760-RS [second amended complaint in Underlying

12  Claim to *Anderson* action]; ECF No. 11-5 in Case No. 3:11-cv-05761-RS [first amended

13  complaint in Underlying Claim to *Roseville Capital* action]; ECF No. 10-2 in Case No. 3:11-cv-

14  06366-RS [complaint in Underlying Claim to *Nowacki* action]; and ECF No. 10-2 in Case No.

15  3:11-cv-06368-RS [amended complaint in Underlying Claim to *Nowacki* action].

16         Hence, Plaintiffs are not forthcoming in their first amended complaints in their

17  characterization of the allegations of the Underlying Claims.  Of course, the Court can disregard

18  the allegations of the first amended complaints to the extent they are contradicted by the

19  pleadings in the Underlying Claims that are referenced therein.  *See Branch, supra,* 14 F.3d at

20  454.  Plaintiffs should know what was alleged in the Underlying Claims better than anyone, as

21  they were the plaintiffs who brought those Underlying Claims and now bring the present actions

22  against Brit by assignment.

23  **D.    <u>Plaintiffs' Mischaracterizations of the Underlying Claims Take the Allegations</u>**

24         **<u>Outside of the D&O Policy's Coverage Grants</u>**

25         In an effort to show that the Underlying Claims alleged conduct that falls outside the

26  scope of the Partial Professional Services Exclusion, Plaintiffs mischaracterize the underlying

27  allegations such that the Underlying Claims no longer fall within the D&O Policy's insuring

28  grants in the first instance.

1    As discussed above, under Insuring Clause C, Brit agreed to cover "Loss resulting from

2    any Claim first made against the Company [*i.e.*, ePlanning] … for a Corporate Act."  "Corporate

3    Act," in turn, is defined as any act, error, omission, etc., involving a Securities Law Violation.

4    (D&O Policy, pp. 10-11 of 51.)  Here, assuming *arguendo* that, for example, the alleged

5    burdening of the properties with unauthorized loans or the alleged failure to maintain occupancy

6    levels at the investment properties is *not connected to* ePlanning's performance of  professional

7    services as investment advisors and securities brokers, this conduct also does not constitute a

8    "Securities Law Violation" by ePlanning that is covered by Insuring Clause C.

9    Similarly, under Insuring Clause A, Brit agreed to cover ePlanning's directors and

10   officers for "Loss resulting from any Claim first made against the Directors and Officers … for

11   an Individual Act."  "Individual Act," in turn, is defined as acts, errors, omissions, etc., by any of

12   the directors and officers while acting in their capacity as a director or officer *of the Company*

13   (here, ePlanning), or as an employee *of the Company* (again, ePlanning) in limited circumstances.

14   (D&O Policy, pp. 10 and 23 of 51.)  Assuming *arguendo* that any of the directors, officers, or

15   employees of ePlanning were, for example, mismanaging the properties, and that this conduct

16   was performed on behalf of other entites and was not connected to ePlanning's performance of

17   professional services, then those directors and officers would not have been committing those

18   acts as directors, officers, or employees *of ePlanning* – a company in the business of providing

19   financial advisory and securities brokerage services.  Moreover, the only officer, director, or

20   employee that matters here is Guidi, since only he and ePlanning have assigned to Plaintiffs the

21   rights to bring this coverage action.

22   Hence, Plaintiffs' tortured reading of the allegations of the Underlying Claims as falling

23   outside the scope of the Partial Professional Services Exclusion also removes those allegations

24   from the scope of the D&O Policy's insuring grants altogether.  Either way, there would be no

25   coverage for the Underlying Claims under the D&O Policy.

26   **E.    Absent Coverage, All of Plaintiffs' Causes of Action Fail as a Matter of Law**

27   Plaintiffs' respective first amended complaints against Brit fail to state any claim upon

28   which relief can be granted because Plaintiffs cannot as a matter of law establish a critical

1   element of their claims.  In order for Plaintiffs to assert any of the various causes of action they

2   have alleged against Brit – *i.e.*, for breach of contract; breach of the covenant of good faith and

3   fair dealing; bad faith; declaratory relief; unfair business practices (Cal. Business & Professions

4   Code § 17200 *et seq.*); and/or direct judgment creditor action (Cal. Insurance Code §

5   11580(b)(2)) – they must first establish the existence of a right to benefits under the terms of the

6   D&O Policy.  *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36 (1995).  Here, Plaintiffs'

7   first amended complaints and the documents attached thereto and referenced within confirm that

8   the Underlying Claims against ePlanning and/or Guidi were not covered under the D&O Policy.

9   Absent coverage under the D&O Policy, Brit cannot be held liable for the alleged causes of

10  action as a matter of law.

11  **F.**      **The Court Should Disregard Plaintiffs' Belated and Improper Attempt to Seek**

12  **Reconsideration of the Order on the Original Motions to Compel**

13          Some of the first amended complaints allege that Brit's interpretation of the Partial

14  Professional Services Exclusion is too broad and would render the policy illusory.  For example,

15  the *Jamison* first amended complaint asserts that Brit's interpretation of the exclusion is too

16  broad and would render the policy illusory based in large part on an attempt to apply the

17  definition of "professional services" in a separate errors and omissions policy ("E&O Policy")

18  underwritten by not only by Brit but also by another underwriter not involved with the D&O

19  Policy.  (ECF No. 46 in Case No. 3:11-cv-04958-RS, at ¶¶ 23-28.)

20          Similarly, the *Anderson* first amended complaint adds a fifth cause of action that was not

21  alleged in their original complaint, seeking declaratory relief that the Partial Professional

22  Services Exclusion and the D&O Policy's "wrongful act" coverage are vague and ambiguous,

23  even though the Court did not grant leave to allege any new facts on this issue, let alone add any

24  new causes of action based on this issue.  (ECF No. 36 in Case No. 3:11-cv-05760-RS, at ¶¶ 147;

25  *see also* ECF No. 11-3 in Case No. 3:11-cv-05760-RS.)

26          The Court has already rejected these arguments and found that the exclusion is

27  conspicuous, plain and clear, and that it is not ambiguous or illusory.  (3/29/12 Order, at pg. 8:9-

28  17 and fn.7.)  Specifically, in finding that the exclusion is not ambiguous, the Court recognized

Sedgwick LLP

1  that the term "partial" (as in *Partial* Professional Services Exclusion) means "that the exclusion

2  is 'partial' in the sense that it exempts professional services rendered for the benefit of third

3  parties, but not for the insured's own benefit, from coverage." (*Id.* at fn. 7.)  The Court further

4  observed that the exclusion is plain, clear, and conspicuous because it "is easy to read, identified

5  by name, and set forth in capital, bold letters." (*Id.* at fn. 8.)  Finally, the Court found that

6  application of the exclusion does not render the policy illusory:  "[V]iewed in its entirety, the

7  policy is not rendered illusory because, even if the exclusion is construed as Brit urges it must be,

8  the policy still provides some insurance coverage." (*Id.* at pg. 9:7-8.)

9          Since the Court granted Plaintiffs leave to amend only to allege conduct that falls outside

10  the professional services exclusion, the Court should simply disregard the additional amendments

11  claiming that the exclusion is ambiguous; not plain and clear; and renders coverage illusory.

12                              IV.    <u>CONCLUSION</u>

13          For the reasons set forth above, Plaintiffs' six related first amended complaints each fail

14  to state a claim against Brit.  Accordingly, Brit respectfully requests that this Court grant its

15  motions to dismiss under Fed.R.Civ.P. 12(b)(6).  Since the Court previously granted leave to

16  amend if Plaintiffs had a good faith basis for amending, and Plaintiffs' attempt to amend has

17  failed, Brit further requests that the motions be granted *without* leave to amend.

18

19  DATED:  May 16, 2012                    SEDGWICK LLP

20

21                                          By: */s/ Michael L. Fox*
                                                Michael L. Fox
22                                              Jamison R. Narbaitz
                                                Attorneys for Defendant
23                                              BRIT UW LIMITED
                                                (sued as "Certain Underwriters at Lloyd's
24                                              Under Policy No. B0146LDUSA0701030")

25

26

27

28

Sedgwick LLP